500 So.2d 355 (1987)
STATE of Louisiana
v.
Alan TRUITT.
No. 84-KA-0202.
Supreme Court of Louisiana.
January 12, 1987.
*356 William Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael McMahon, Terry Boudreaux, Asst. Dist. Attys., for plaintiff-appellee.
Ralph S. Whalen, New Orleans, for defendant-appellant.
DENNIS, Justice.
Defendant, Alan Truitt, was convicted by a jury of forcible rape, La.R.S. 14:42.1, and sentenced to 15 years at hard labor, two years without probation, parole or suspension of sentence. Defendant's appeal to this court was taken before the effective date of the constitutional change making such cases appealable to the courts of appeal. See La. Const. of 1974, art. V § 5(D). After considering the oral and written arguments of counsel we affirm the conviction but vacate the sentence and remand the case for resentencing.
Heidi Brown[*] was raped by three men on the night of February 13, 1981 after visiting the Old Post Office Lounge in New Orleans. The major contested issues in this case are whether her identification of the defendant as one of the offenders was accurate and whether her ability to reliably identify her assailants was seriously impaired by drug and alcohol intoxication.
The State's evidence tended to prove the following: Heidi Brown had gone to the Old Post Office Lounge in New Orleans with several of her friends about 9:30 p.m. She saw the defendant, with whom she was slightly acquainted and visited with him during the evening. When Heidi was ready to leave about 10:00 to 11:30 p.m. she could not find her friends. When she asked the defendant for a ride, he arranged for two male friends to give them both transportation. A short distance from the bar, one of the other men suggested that they stop and smoke some marijuana. All agreed. In a few minutes they stopped near a large unlighted field. After they had disembarked from the car and had begun to share a joint, one of the defendant's two male friends pushed Heidi to the ground and the other held her down while all three undressed her. Beginning with the defendant, each of the men raped Heidi while his two companions held her down. After they were finished, the defendant threw Heidi her clothes and told her to get dressed. The defendant and his friends then left her alone in the field. Heidi made her way to a nearby road where a passing factory worker came to her assistance. She told the man she had been raped and he called the police. He testified that Ms. Brown did not appear intoxicated. The police found the victim's shoes and socks as well as fresh tire tracks in a field in the Industrial Canal area, not far from the bar. Ms. Brown identified Alan Truitt as one of the men who had raped her and he was arrested at 6:30 p.m. the next day. She was not able to identify either of the other two men.
The victim's friends testified that while Heidi drank a few beers that night, she did not appear intoxicated. The victim denied taking a Quaalude that night, and the testimony of her friends corroborates this contention.
The defendant's evidence, on the other hand, tended to show that the victim was too intoxicated on alcohol and drugs to make a reliable identification. The defense witnesses testified that the victim consumed numerous beers at the bar and that she took at least one Quaalude. There was testimony that she was stumbling, falling out of her chair, and that, at one point in the evening, she vomited on the floor. Also, several of the defendant's friends testified that the defendant was not out of their sight for longer than fifteen to thirty minutes during the entire evening and that at approximately 1:30 a.m. he had ridden home with the girls he had gone there with.
The defendant testified that after Heidi swallowed a Quaalude she fell from her *357 chair and had to be helped up three or four times. Truitt claimed that a couple who said they were going to a motel told him that Heidi wanted to come along. When he asked her to go to the motel with him, she consented although she was "kind of sleeping" at the table, according to the defendant. Thirty to forty-five minutes later he waked her up and started to help her outside because the other couple was ready to go. As they were leaving, Heidi became ill and vomited on the floor. He let her drop to the floor and went to the bar to get a beer. When he looked back he saw her being carried out by several people. The defendant testified that when he went outside to look for Heidi that she had disappeared. Therefore, he said, he ended up going home with the friends who had brought him.
Dr. Daniel Rhodes, the emergency room physician who examined the victim, testified that he found grass and dirt in and around her buttocks and vaginal area. She did not have any cuts and bruises. He also testified that when he examined her at 2:30 a.m. on February 14 she did not appear to be intoxicated. She was able to get on and off the table and to dress herself without difficulty.
A medical technologist testified that the victim's lab tests indicated Heidi had sexual intercourse on the night in question. The tests showed that she had intercourse with an A, O or AO bodily secretor. She also could have had intercourse with a nonsecretor. Testimony by Daniel Waguespack of the NOPD Crime Lab showed that the defendant was a nonsecretor.
In this appeal, the defendant raises five assignments of error.

Assignment of Error No. 1
Defendant argues that his conviction should be reversed because the trial court's rulings allowed the prosecuting attorney to ask the defendant not only whether he had been convicted of a previous crime but also to elicit details of that crime in violation of R.S. 15:495.
The defendant took the witness stand in his own behalf and gave testimony that, although he had been with Heidi Brown at the Old Post Office Lounge on the evening of the rapes, he did not leave the premises with her, but went home with other friends, indicating that the victim had been mistaken in identifying him as one of the rapists.
On cross-examination the prosecuting attorney questioned the defendant about his prior conviction of simple battery and the trial court overruled defense counsel's objections at several points:

* * * * * *
Q. What was it that you were convicted of?
A. Simple battery.
Q. Do you recall the facts and circumstances surrounding that conviction?
A. Pretty much so.
Q. You were at a block party, weren't you?
A. Yes, sir.
Q. And the person who was giving the block party was picking up litter on the neutral ground, correct?
A. No, sir.
[DEFENSE COUNSEL]:
Your Honor, I am going to object. It sounds like we are going to get into a retrial of the whole thing.
THE COURT:
I don't want to get into the whole police report.
Q. Isn't it a fact that the basis of this simple battery conviction was that you hit a man by the name of Mr. Dan Johnson on the side of the head with a glass bottle?
A. I was defending myself.
Q. You were defending yourself?
A. The man had his hands around my neck.
Q. You hit him alongside the head
A. I asked him to leave me alone.
* * * * * *
Q. You hit him alongside the head with a glass bottle?
A. Yes, sir.

*358 Q. Do you know Mr. David Namie? A. Yes, sir.
Q. Who is he?
A. A guy I went to school with in the seventh grade.
Q. Wasn't he charged with you in that bill of information for the crime?
A. Yes, sir.
Q. And didn't it come out that you and Mr. David Namie
[DEFENSE COUNSEL]:
I object again.
THE COURT:
He is going into the factual basis and I will permit it. I permitted it this far.
* * * * * *
Q. Isn't it a fact that you and Mr. David Namie were both in fact fighting Mr. Dan Johnson?
A. No, it ain't a fact.
Q. What were the facts?
A. The fact was I was leaving a party going to the lakefront with Mr. Namie and I threw a beer bottle on the ground and this guy said, "Who threw the beer bottle on the ground". I didn't know it was the guy that threw the party. Nobody said nothing. He said, "Well, did you throw the beer bottle on the ground". I said, "No". He said, "Well pick it up". I said, "No". He became outraged and grabbed me, the guy was pretty drunk and a lot bigger than me. He grabbed me by the throat and I said, "Leave me alone, I don't want any trouble". The guy wouldn't leave me alone and I reached down and grabbed the bottle. Mr. Namie didn't even throw a punch.
Q. This was self-defense?
A. Yes, sir.
Q. In spite of this being self-defense, you did in fact plead guilty to the crime of simple battery?
A. Yes, sir. I did hit the guy.
Q. In self-defense?
A. Yes, sir.
Q. And I am sure you are aware at the time that self-defense
[DEFENSE COUNSEL]:
Again, we are going into far more than the facts
THE COURT:
You are wasting your time. I already ruled.
Q. You did in fact plead guilty to the crime of simple battery?
A. Yes, sir.
* * * * * *
La.R.S. 15:495 provides:
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
Nevertheless, our decisions beginning with State v. Jackson, 307 So.2d 604 (La. 1975) have permitted a cross examiner not only to ask whether a witness had been convicted of a crime but also to elicit details of the crime in order to show the true nature of the offense. In subsequent cases, this court limited the Jackson interpretation, holding that:

Jackson, supra, should be limited to questioning relative to prior convictions. It does not create a standard for questioning a witness about prior arrests or charges. Only limited questioning as to the facts of prior conviction is permissible. Minor details of far ranging and irrelevant matters such as conditions of probation, alleged but uncharged offenses and charges dropped in response to a guilty plea may not be used to cast doubt on a defendant's credibility.
State v. Connor, 403 So.2d 678, 680 (La. 1981); see also State v. Brown, 371 So.2d *359 746 (La.1979); State v. Oliver, 387 So.2d 1154 (La.1980).
The questions by the prosecuting attorney did not violate the proscription of R.S. 15:495, as interpreted by Jackson and its progeny; State v. Connor, in particular. The cross-examination was designed to bring out the true nature of the offense but did not call for any details as to the arrest, indictment or prosecution, as interpreted by our previous decisions. The questioning was limited by the trial court and did not range into minor details, irrelevent matters, conditions of probation, uncharged offenses or dropped charges. For the same reasons, the prosecuting attorney's reference in his closing argument, to the defendant's inconsistency in claiming justification by self defense to a crime to which he pleaded guilty, was not a misuse or misapplication of impeachment evidence under La.R.S. 15:495.
This assignment of error is without merit.

Assignment of Error No. 2
The defendant asserts that the trial court erred when it denied the defendant's motion for a new trial. He argues that a new trial is required by La.C.Cr.P. art. 851 because the verdict is contrary to the law and the evidence, and by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) because no reasonable trier of fact could have reached a conclusion of guilt beyond a reasonable doubt.
Many of the evidentiary facts in this case were strenuously disputed. Nevertheless, we conclude that a reasonable juror could have found the defendant guilty of forcible rape beyond a reasonable doubt.
The jury reasonably could have accepted, as credible, the testimony of Heidi Brown and her friends that she was not intoxicated from either alcohol or Quaaludes. Consequently, the jury also reasonably could have accepted her testimony that the defendant was one of the men who forced her to have sexual intercourse. While the medical evidence was not conclusive, it confirmed the victim's story that she had had sexual intercourse in a grassy area that night. The unbiased testimony of Joseph Webb and Dr. Rhodes further tends to confirm the testimony that she was not intoxicated that evening. The fact that Heidi's shoes and socks were found in a field a short distance from the bar further confirms her version of the facts.
Moreover, the jury reasonably could have chosen to discount the testimony of the defendant and his friends that the victim was extremely intoxicated, stumbling and vomiting on the floor. It reasonably also could have disbelieved the defendant's account of his whereabouts and the testimony of his friends that they saw him every 15 to 20 minutes that night, particularly since the bar was very crowded and they were not wearing watches.
The defendant's second assignment of error is without reversible merit.

Assignment of Error No. 3
The defendant argues that the lack of effective assistance of counsel requires a new trial. The defendant points out a number of alleged errors made by his trial attorney. This argument is premature. The appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal. State v. Brown, 384 So.2d 983 (La.1980); State v. Robertson, 310 So.2d 619 (La.1975); State v. Dauman, 468 So.2d 2 (La.App. 2d Cir.1985); State v. Carter, 463 So.2d 785 (La.App. 2d Cir.1985); State v. Bourgeois, 451 So.2d 172 (La.App. 1st Cir.1984).

Assignment of Error No. 4
Defendant contends that the trial court erred when it allowed the testimony of Sergeant John Lynch in rebuttal as to the driving time from the bar to the crime scene. The defendant asserts that this evidence should have been introduced by the prosecution in its case in chief, because it neither explains, repels, counteracts or disproves any facts offered in evidence by the defense, as required by our jurisprudence. State v. Turner, 337 So.2d 455 (La.1976).
*360 The testimony of Sgt. Lynch tends to counteract or explain the testimony of Donna Fauries and Kerri Barrere. They testified that they saw the defendant at the bar every 15 to 20 minutes during the evening of the rapes. Their testimony implied that the defendant was not absent long enough to participate in the offenses. The testimony of Sgt. Lynch tended to show that it would have been physically possible for the offenders to transport the victim to the scene of the crime, rape her and return to the bar within a relatively brief interval.
This assignment lacks merit.

Assignment of Error No. 5
The trial court sentenced the defendant to serve 15 years at hard labor, two years without probation, parole or suspension of sentence. Under the sentencing provisions of La.R.S. 14:42.1, the defendant could have been sentenced to between two and forty years of hard labor, with the first two years to be served without benefit of parole or probation.
The defendant was 19 years old at the time of the crime. His record was clear of criminal convictions except for one misdemeanor simple battery conviction. There was no testimony that the defendant or any other participant had a weapon. The defendant did not violate the sanctity of a home or otherwise intrude upon the victim's privacy in order to commit the crime. It does not appear that the victim received any permanent physical or psychological harm as the result of the offenses. There is no evidence that any threats were made to the victim to prevent her from going to the police or causing prosecution. Under the circumstances of this case, the sentence of 15 years of hard labor appears to be excessive in the absence of a complete articulation of the trial judge's sentencing reasons. Therefore, we will vacate the sentence and remand the case to the trial court for resentencing.
For the foregoing reasons, the defendant's conviction is affirmed but his sentence is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED AND CASE REMANDED TO THE TRIAL COURT.
MARCUS, J., concurs with the affirmance of the conviction but dissents from the reversal of the sentence.
LEMMON, J., dissents in part from reversal of the sentence, believing that a fifteen-year sentence for participation in a gang rape (now punishable under La.R.S. 14:42 as aggravated rape with a life sentence) is not apparently severe.
NOTES
[*] The name of the victim has been changed to conceal her identity.