868 So.2d 863 (2004)
STATE of Louisiana
v.
Allen A. RHEA, Jr.
No. 03-KA-1273.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 2004.
*864 Paul D. Connick, Jr., District Attorney, Juliet Clark, Terry M. Boudreaux, Allison Monahan, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The defendant has appealed his conviction of attempted second degree murder and the 50 year sentence he received as a result of this conviction. For the reasons that follow, we affirm.

FACTS:
*865 E.T.[1] testified that she went to Winn Dixie on Carrollton Avenue and Canal Street in New Orleans at dusk on August 9, 1997. Just as she prepared to exit her car, a young black male, later identified as James Rhea, opened the driver's side of her car, pointed a gun at her and demanded that she move to the passenger's seat. E.T. complied. James Rhea then drove her to an area she described as Bamboo Road between the parishes of Orleans and Jefferson where he raped her. Thereafter, he put her in the trunk of her car and drove around for a while. While in the trunk E.T. could tell that James Rhea had stopped and picked up another male, whom E.T. later identified as defendant, Allen Rhea.
E.T. testified that after Allen Rhea entered the car, she heard him ask James Rhea if anyone was in the trunk. Upon hearing the question, E.T., from inside of the trunk, cried out for help. Allen Rhea, instead of offering help, responded that he would not kill her if she cooperated. James and Allen Rhea then rode around in the car with E.T. in the trunk. Later they stopped to put gas in the car. E.T. testified that at this point, Allen Rhea hit the trunk and said he would kill her if she made any noise. E.T. further testified that she heard music playing in the car, and the lyrics repeated, "You're going to die tonight." The car started moving again, but stopped in New Orleans East. E.T. testified that Allen Rhea opened the trunk and ordered her to get into the back seat. Allen Rhea sat in the back seat with her and asked why she went to the grocery store alone, "knowing that this is the kind of thing that ... young men do."
E.T. explained that Allen Rhea held the gun to her head and demanded that she perform oral sex on him. When she told him that she was about to vomit, he threatened to kill her if she did. E.T. further testified that Allen Rhea and James Rhea then took turns raping her. E.T. explained that the two men started to argue while they were in New Orleans East and that is when she learned their names.
E.T. testified that they left the area, with James Rhea driving while she was in the backseat with Allen Rhea, who had the gun. Allen Rhea told her that he would let her live if she gave them $800.00. E.T. explained that she did not have any money in her bank account, but said that she could obtain it. Allen Rhea said he knew she had money because she was employed and that he would kill her because she was "playing with him." E.T. was taken to the ATM at the Hibernia bank at Canal and Carrollton, where she attempted unsuccessfully to obtain money. Photographs from the bank's camera were admitted into evidence, and E.T. identified herself in the backseat of her car. E.T. explained that Allen Rhea had pulled his shirt over his face to conceal his identity.
E.T. testified that when she was unable to obtain money, Allen Rhea became upset. She testified that he told James Rhea, "Let me just kill her right here ... Let me do the bitch right here." James Rhea replied that they would take her somewhere else. She was taken to the St. Bernard Housing Projects where she saw a police car, but Allen Rhea told her that he would shoot her if she attempted to escape. James Rhea started driving again, but stopped to talk to someone. E.T. testified that one of the perpetrators said that they were going to "do this bitch `cause she said she didn't have any money, *866 and we know she's lying." E.T. testified that Allen Rhea continued to be in possession of the gun. James Rhea continued driving to Jefferson Highway near Ochsner Hospital where Allen Rhea and James Rhea argued about where to shoot E.T. E.T. testified that Allen Rhea said, "I know where to go." They proceeded to River Road and Arnoult Street, where Allen Rhea ordered her to exit the car. E.T. stated that Allen Rhea told her that they were going to kill her, it would not take long, and that they would talk to her for about fifteen minutes and then kill her. E.T. explained that she was told to walk up the levee and Allen Rhea and James Rhea followed her. She testified that near the River Shack Lounge on River Road, she saw a man coming toward her. Once again, Allen Rhea threatened to shoot her and to kill the man if she tried to flee. At the top of the levee, Allen Rhea handed the gun to James Rhea while Allen Rhea urinated. E.T. testified that she resumed walking with James and Allen Rhea behind her and then she was shot twice. One of the shots went through her abdomen and the other went through her side. E.T. testified that she lay on the ground, pretending to be dead while she heard James and Allen Rhea leave. After James and Allen Rhea ran off, she crawled across the levee and made her way to the street. James and Allen Rhea were still in the area and yelled at her to go to the car. Instead, she went to the street and flagged down a vehicle. E.T. testified that a man in a truck stopped, she told him what happened, and he brought her to Ochsner Hospital. E.T. explained that when the man stopped, James and Allen Rhea hid behind a vehicle.
E.T. testified that at the hospital, she gave a description of the perpetrators to the police. In particular, she said that one of them was called "Allen" and had two gold teeth and the other was called "James." She subsequently made positive identifications of Allen and James Rhea from photographic lineups and she positively identified Allen Rhea at trial.
New Orleans Police Officer Howard Martin testified that on August 10, 1997, he spotted a car matching the description of the victim, E.T.'s, stolen car. After a high-speed chase, police officers discovered that the car was occupied by James Rhea and his cousin, Roy Cain, along with two black females. Through statements given by James Rhea and Roy Cain, the police learned that James Rhea was a participant in the events involving E.T. and that Roy Cain was not. The police also obtained a warrant for Allen Rhea's arrest and a search warrant for his residence. The police searched the residence, but recovered no evidence. Allen Rhea was not at the residence at the time of the search. Allen Rhea's mother, Lisa Turner, told the police that her son said James Rhea kidnapped a woman and stole a car. One of the officers involved in the search, Lieutenant Steve Buras, testified that Ms. Turner told him that Allen Rhea had admitted that both he and James Rhea had sex with the woman. Meanwhile, Allen Rhea, accompanied by his father, turned himself in to the police.
Nineteen-year-old Roy Cain (Roy) testified, denying participation in these offenses. Roy testified that he saw James, his cousin, at the Winn Dixie armed with a gun. James told Roy that he was going to "go do something." Roy testified that he saw someone in a car, and he left the area when he saw that both James and the car were gone. Roy explained that he saw the car the next morning when James came to his residence. Roy admitted to prior convictions and said that he was currently housed in the Jefferson Parish jail, but had previously been incarcerated in Hunt Correctional Center.
*867 At trial, the State's forensic DNA analyst, Nikia Redman, testified that Roy Cain was excluded from every piece of evidence tested. Ms. Redman testified that DNA consistent with the DNA of Allen Rhea and James Rhea was found in several samples. In particular, Ms. Redman testified that DNA testing of the victim's internal and external vaginal samples indicated that Allen Rhea and James Rhea could not be excluded as donors of the DNA in the samples. According to Ms. Redman, 99.9 percent of the Caucasian, African American, and Hispanic populations were excluded as possible donors to these samples.[2]
The defense did not present any witnesses.
At the conclusion of trial, the twelveperson jury returned a verdict of guilty of attempted second degree murder. Allen Rhea was sentenced to 50 years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Further, Allen Rhea was denied diminution of sentence because he had committed a crime of violence. This timely appeal followed.

ASSIGNMENT OF ERROR NUMBER ONE:
At a pretrial hearing, Allen Rhea argued that evidence of the other crimes that occurred in Orleans Parish preceding the attempted murder should be excluded as unduly prejudicial. The trial court denied the motion. In his First Assignment of Error, Allen Rhea contends that the trial judge improperly denied this Motion in Limine to exclude evidence of the other crimes that preceded the attempted murder. The State responds that the trial judge properly denied the motion because the evidence was "res gestae" and was independently relevant.
Evidence of other crimes or bad acts committed by a criminal defendant is generally not admissible at trial. LSA-C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, evidence of other crimes, wrongs or acts may be introduced when it is independently relevant or when it relates to conduct, formerly referred to as res gestae, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404(B)(1). A close connexity between the charged and uncharged conduct is required to insure that "`the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" State v. Noten, 01-1818, p. 2 (La.6/25/01), 791 So.2d 607, 609 (per curiam) (quoting State v. Haarala, 398 So.2d 1093, 1097 (La.1981)).
The test for integral act (res gestae) evidence is, therefore, not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive the State's case of narrative momentum and cohesiveness, "`with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.'" State v. Colomb, 98-2813, p. 4 (La.10/1/99), 747 So.2d 1074, 1076, quoting Old Chief v. United States, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997).
In State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 *868 S.Ct. 2011, 72 L.Ed.2d 467 (1982), the Louisiana Supreme Court held that evidence of other crimes regarding the criminal activity before and after the victim's death was properly admissible as "res gestae" evidence. In that case, an accomplice recounted that defendant had suggested to him and another person that they make a "hit" at a "lady's" house. The three first went to a grocery store where defendant stole some wine. Then they went "looking" for a car so that they could steal the "lady's" car, but two attempts at theft failed. Ultimately, the group robbed the victim at her home, killed her, and fled in the victim's car. Thereafter, defendant, who was driving the victim's car, followed a woman on a college campus and told the accomplice to snatch a woman's purse. The defendant proposed another "hustle," and parked across the street from a convenience store. However, the appearance of a police officer terminated the night's activities. The Court pointed out that the murder was connected to the string of criminal activity stating:
The murder of Ms. Todd did not occur in a vacuum.... The theft of the victim's car can hardly be said to be unrelated to her death. Using the victim's car, defendant and his cohorts continued their night of criminal activity. The sequence of events did indeed form "one continuous transaction" with the crime for which defendant was being tried and therefore were properly admitted under the res gestae exception to the prohibition against the introduction of other crimes evidence. As this court remarked in State v. Curry, 325 So.2d 598, 602 (La., 1976), "(w)ithout (such) evidence, the complete story of the crime (could) not be told."
State v. Edwards, 406 So.2d at 1351.
As in Edwards, the attempted murder of E.T. did not occur in a vacuum. It began with the kidnapping by James Rhea and culminated in the attempted murder of E.T. During this time leading up to the shooting, Allen Rhea repeatedly told E.T. he would kill her, forced her to perform sex acts at gunpoint, and told her he would not kill her if she gave him money. These events were so intertwined with the attempted murder that the State could not have told the complete story to the jury without evidence of these events.
Further, as pointed out by the State, the evidence had independent relevance other than to show that Allen Rhea was a bad person. Here, the State was required to prove that Allen Rhea had the specific intent to kill E.T. See, State v. Zaldivas, 02-690 (La.App. 5 Cir. 12/30/02), 836 So.2d 577, 580-581, writ denied, 03-705 (La.10/17/03), 855 So.2d 757. Allen Rhea's statements and actions preceding the attempted murder were relevant to prove that he had the specific intent to kill E.T. Accordingly, this Assignment of Error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO:
In his Second Assignment of Error, Allen Rhea contends that he received ineffective assistance of counsel because his attorney failed to call an unnamed expert DNA witness who prepared a report indicating that Allen Rhea was excluded as a DNA donor to the evidence recovered from E.T. According to Allen Rhea, the expert's testimony and report was relevant to cast doubt upon E.T.'s identification of him as a perpetrator. Allen Rhea reasons that if the victim was incorrect in her identification of him as a rapist, then it would follow that she was also incorrect in her identification of him as one of the two people who attempted to kill her. The State responds that the record does not contain sufficient evidence to address this assignment on appeal. Rather, the State *869 contends that the matter should be relegated to post-conviction relief.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution of 1974. When a defendant raises a claim of ineffective assistance of counsel, that claim is evaluated under the two-prong test established by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show (1) that defense counsel's performance was deficient, and (2) that the deficiency prejudiced the defendant. To show prejudice under this test, the defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La.1987). Only when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, may it be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993). See also, State v. Stowe, 93-2020, p. 8 (La.4/11/94), 635 So.2d 168, 173, in which the Louisiana Supreme Court stated that a claim of ineffective assistance of counsel is more properly raised by application for post-conviction relief in the trial court, where a full evidentiary hearing may be conducted if warranted.
The record reflects that, on redirect examination, the State's DNA expert, Nikia Redman, denied being aware of the existence of any report or testing contradicting her findings. After the witness left, defense counsel, Evans Schmidt, approached the bench to inform the trial judge that he had a report that contradicted the State's DNA test results and excluded Allen Rhea as a perpetrator. The court stated for the record that the defense had stated on the previous day that it did not have an expert witness to call for trial. The defense counsel said that he had not planned to call the witness, but that the State's last question to the expert had opened the door to allow the defense to introduce the report. The prosecutor stated for the record that a former defense counsel in the case, Ms. Wiggins, had stated that she had an expert witness, but that there was no report. Further, the prosecutor said that if she had known such a report existed, she would not have asked the final question to the State's expert about a conflicting report. Finally, the trial judge stated that the defense's report could not be introduced into evidence, but that he would permit the defense to crossexamine the State's expert with hypothetical questions based upon the report. The record reflects that the defense did not recall the State's expert and did not proffer the expert's report into evidence.
The record before us does not clearly establish whether or not a conflicting DNA report existed, and if it existed whether there was some strategic reason why defense counsel did not utilize the report. Because the record is insufficient to review Allen Rhea's ineffective assistance of counsel claim, we find that this issue should be more properly addressed in an Application for Post-Conviction Relief.

ASSIGNMENT OF ERROR NUMBER THREE:
In his Third Assignment of Error, Allen Rhea contends that the maximum sentence of fifty years of imprisonment is constitutionally excessive because he was sixteen years old at the time of the crime, *870 had no criminal history, was not the shooter, and did not originally kidnap the victim. The State responds that the record supports the sentence imposed.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992). Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Williams, 98-1146, p. 22 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 655, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176. However, LSA-C.Cr.P. art. 881.4(D) provides that the court of appeal "shall not" set a sentence aside on grounds of excessiveness if the record supports the sentence imposed. See, State v. Richmond, 98-1015 p. 8 (La. App. 5 Cir. 3/10/99), 734 So.2d 33, 38.
Allen Rhea was convicted of attempted second degree murder and, thus, faced a penalty of imprisonment from ten to fifty years at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27; 14:30.1. Before imposing sentence, the victim, E.T., made a statement in open court. She asked the court to consider that she had asked defendant, Allen Rhea, for help, but he chose not to. The victim, E.T., continued:
I would ask the court to consider that he intended to kill me. He took pleasure in taunting me and letting me know that that [sic] was his intent to kill me. And the only reason that I'm sitting here is because of the grace of God.
Before the judge imposed sentence, the defense urged the court to consider that Allen Rhea was sixteen when he committed the offense, he had no prior criminal record, and that the evidence was not clear he was the shooter. Thereafter, the trial judge imposed the fifty-year sentence with reasons, including that Allen Rhea had "manifested deliberate cruelty to the victim" and had used threats and actual violence in the offense.
On appeal, "the only relevant question is whether the penalty imposed is disproportionate to the offense, not whether another sentence might seem more appropriate." State v. Taves, 03-518 (La.12/3/03), 861 So.2d 144, 145. Once imposed, a sentence will not be set aside absent manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Tran, 97-640, p. 12 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 318. In the present case, we find that the record supports the sentence imposed. The victim, E.T.'s, trial testimony reflects that Allen Rhea repeatedly told her that he would kill her and he sexually assaulted her at gunpoint. Further, even if Allen Rhea did not fire the gun, E.T. testified that Allen Rhea was more in control and that the situation worsened after he became involved.[3] Based on the foregoing, we find no abuse of the trial judge's discretion in sentencing the defendant, Allen Rhea.

ERROR PATENT DISCUSSION:
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; *871 State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Two errors are noted on the commitment. First, the transcript reflects that the trial judge stated at sentencing that Allen Rhea was not eligible for diminution of sentence because he had committed a crime of violence whereas the commitment does not. The trial judge was within his discretion to deny diminution of sentence pursuant to LSA-C.Cr.P. art. 890.1, which provides that the sentencing court may deny diminution of sentence to a person who is convicted of a crime of violence who is sentenced to imprisonment. Attempted second degree murder is a crime of violence as provided in LSA-R.S. 14:2(13). Second, the commitment reflects that Allen Rhea was tried by a judge, while the transcript reflects that Allen Rhea was tried by a jury.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, this matter is remanded to the trial court to allow the trial judge to correct the commitment to conform with the transcript.

CONCLUSION:
For the foregoing reasons, Allen Rhea's sentence and conviction are affirmed. This matter is remanded to the trial court for the limited purpose of correcting the commitment form.
CONVICTION AND SENTENCE AFFIRMED; MATTER REMANDED
NOTES
[1] As provided by LSA-R.S. 46:1844(W)(1)(a), the sex crime victim is identified by her initials.
[2] The State also presented the testimony of another expert, Patricia Daniels, who testified in the field of detection and identification of bodily fluids.
[3] LSA-R.S. 14:24 provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."