STATE OF LOUISIANA

VERSUS

JERMAN NEVEAUX

NO. 23-K-477

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-4029, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

November 10, 2023

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Stephen J. Windhorst

**<u>WRIT DENIED</u>**
  **SMC**
  **FHW**
  **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Darren A. Allemand

COUNSEL FOR DEFENDANT/RELATOR,
JERMAN NEVEAUX
     Christine M. Lehmann
     Richard J. Bourke
     Elliott T. Brown

**CHEHARDY, C.J.**

Defendant, Jerman Neveaux, seeks supervisory review of the district court's ruling that evidence of other crimes or bad acts would be admissible at trial as integral act evidence. For the reasons that follow, the writ is denied.

**PROCEDURAL HISTORY**

On October 13, 2016, defendant, Jerman Neveaux, was indicted for the first degree murder of Jefferson Parish Sheriff's Office (JPSO) Detective David Michel in violation of La. R.S. 14:30. The State is seeking the death penalty.

On November 19, 2018, the State filed an Answer to Jackson Demand for Notice of Any Bad Acts that the State May Wish to Use at Either Phase and 404(B) Notice. On June 6, 2019, the State filed State's Notice of Intent to Use Other Crimes Evidence Pursuant to La. C.E. Article 404(B) and in the Alternative, Admit Evidence of Other Crimes as Res Gestae. The State's notice of intent identified the following other crimes or bad acts evidence that it seeks to introduce at trial:

1. Defendant's prior conviction for illegal possession of stolen things, to wit: a firearm;

2. Evidence that defendant possessed the .38 Rossi revolver prior to the murder; and

3. Defendant's intent to commit an armed robbery on the day of the murder.

The State argued this evidence is admissible under La. C.E. art. 404(B) for two reasons: (1) this evidence formed an integral part of the chain of events and police investigation leading up to defendant's arrest for first degree murder; and (2) for its independent relevance to show motive, intent, identity, knowledge, system, plan, preparation, and opportunity, and to negate a claim of accident, mistake, or self-defense. In its notice of intent, the State explained that on June 22, 2016, Detective Michel, a member of the JPSO Star Division, notified other

23-K-477                                    1

members of the Star Division over the Star radio channel that he was conducting a stop on a black male (defendant) at the intersection of Manhattan Boulevard and Ascot Road. Only moments later, over the same radio channel, Detective Michel shouted, "I'm shot." The State averred that Detective Michel was actually shot three times in the back and later died. JPSO homicide detectives located and arrested defendant for the first degree murder of Detective Michel. According to the State, during defendant's arrest, investigators located and recovered a silver .38 Rossi revolver that was concealed on his person.

In its notice of intent, the State maintained that during the course of the investigation, detectives spoke with a witness (W19),[1] who stated that, while walking down Manhattan Boulevard during a lunch break, he was concerned about a suspicious person (later identified as defendant) following him. The State further maintained that W19 was on the phone with his girlfriend, W27, while this occurred, and that W19 expressed his concern about the suspicious person to W27. The State asserted that, moments later, Detective Michel observed this suspicious person (defendant) following behind W19, and pulled up to speak to him. According to the State, it was during this interaction with defendant that a physical altercation ensued, after which defendant pulled a firearm from his person and shot Detective Michel three times in the back.

The State also noted in its notice of intent that eight days earlier, defendant had appeared in Orleans Parish Criminal District Court and pled guilty to the reduced charge of illegal possession of stolen things, to wit: a firearm under La. R.S. 14:69, a misdemeanor, for which defendant received a deferred sentence that included inactive probation. The State averred that the original charge was illegal possession of a stolen firearm under La. R.S. 14:69.1, a felony. According to the

---

[1] In its notice of intent, the State referred to each witness by number. The witnesses are also each referred to by number in the police reports and the statements attached to the State's notice of intent.

State, while on probation, defendant possessed a silver .38 Rossi revolver and was in possession of this revolver at the time he was stopped by Detective Michel on June 22, 2016. The State asserted that during his June 24, 2016 interview with Sergeant Travis Eserman, defendant admitted that he had stolen the .38 Rossi revolver that he used to shoot Detective Michel from an unknown black male in New Orleans. Also during his interview with Sergeant Eserman, defendant explained that he believed Detective Michel was going to handcuff and arrest him, because he thought Detective Michel had seen the gun in his pocket, and defendant knew he already had a gun charge from New Orleans where he received a misdemeanor.

In its notice of intent, the State submitted that investigators spoke with a witness (W29), who knew defendant, knew defendant to carry a firearm, and had observed defendant in possession of a silver revolver just days prior to the homicide.[2] The State averred that W29, as well as W33 (*see* Footnote 2), provided information to investigators regarding verbal statements and text messages by defendant expressing his intent to rob a specific person on the day of the homicide. In particular, the State asserted that defendant verbally told W29 that he was going to rob a person named "Putt," and that "he" would be walking down Manhattan Boulevard. According to the State, defendant exchanged text messages with W29 on June 21, 2016, and June 22, 2016, wherein defendant discussed his need for a "tool," and that he knew someone "we could jack out a tool." The State noted that investigators learned from W29, and also knew from their own experience, that

---

[2] The State identified another witness, W33, now deceased, who also knew defendant and had observed him in possession of a silver revolver two weeks prior to the shooting. The State averred that W33 observed the .38 Rossi revolver that was recovered from defendant's person displayed during a JPSO press conference, and advised that it was identical to the revolver W33 had previously seen in defendant's possession. The State contended that defendant had a conversation with W33 on the morning of June 22, 2016, prior to the murder, wherein defendant stated he wanted to rob "Putt" of a .40 caliber firearm. The State acknowledged that it could not use W33's statement at trial because of W33's demise.

"tool" meant firearm, and that "jack" meant to rob someone. The State claimed that defendant also sent text messages discussing the person he was going to rob named "Putt," which indicated that he was going to do it by himself. The State explained that on June 22, 2016, at 12:29 p.m., approximately eight minutes after Detective Michel notified other members of the Star Division that he was conducting a stop on a black male (defendant) at the intersection of Manhattan and Ascot, defendant texted W29 to come and get him. The State averred that W29 sent multiple text messages asking defendant where he was, but received no response. The State explained that defendant's phone was recovered by JPSO detectives at the time of his arrest.

The State argued in its notice that it was not seeking to introduce defendant's actions for the purpose of showing their criminal nature, but rather, to demonstrate the chain of events leading up to the murder of Detective Michel. According to the State, the evidence developed by the JPSO investigators played an integral role in this investigation by piecing together the various acts of defendant in the days leading up to, the morning of, and minutes before the murder, and therefore, they have tremendous independent relevance, and their probative value outweighs any potential undue prejudice. As such, the State argued that the other crimes and bad acts evidence is admissible at trial as integral act evidence. Further, the State argued that evidence of defendant's other crimes or bad acts was independently relevant and admissible to prove his intent, motive, and plan, as well as to negate a claim of accident, mistake, or self-defense. In sum, the State maintained that this evidence clearly showed that defendant possessed a firearm while walking down Manhattan Boulevard on the day of the murder and that his clear intent was to commit an armed robbery.

The State attached the following exhibits to its notice of intent to introduce the other crimes and bad acts evidence at trial, including:

1. Exhibit 1 – JPSO Supplemental Report;

2. Exhibit 2 – Transcribed statement from W19;

3. Exhibit 3 – Transcribed statement from W27;

4. Exhibit 4 – Orleans Parish Criminal District Court docket master #529-362;

5. Exhibit 5 – CD containing defendant's interview;

6. Exhibit 6 – Transcribed statement from W29;

7. Exhibit 7 – Transcribed statement from W33; and

8. Exhibit 8 – Text messages from June 21 and 22, 2023.

On January 13, 2023, defendant filed a Motion for Adequate Notice of 404(B) Evidence. Defendant filed a renewed motion for adequate notice on July 10, 2023, wherein he argued that the State's notice of intent was inadequate because: (1) the notice provided two lists of possible 404(B) exceptions and did not identify which list was correct, was not particularized as to each alleged uncharged act, and failed to explain how each act met the 404(B) exceptions listed; and (2) the notice failed to explain whether the State intends to use at trial the actual fact of the prior conviction, the underlying facts of the offense, or the fact that defendant was on misdemeanor probation. Defendant filed a supplement to the renewed motion for adequate notice on August 18, 2023, arguing that, based on this Court's decisions in *State v. Goffner*, 23-179 (La. App. 5 Cir. 4/7/23) 2023 WL 2818800 (unpublished opinion; not designated for publication), and *State v. Goffner*, 23-403 (La. App. 5 Cir. 8/17/23) 2023 WL 5286311, *reh'g denied* (unpublished opinion; not designated for publication), the trial court should require the State to specifically identify which items of evidence it seeks to admit, and for each item of evidence, which 404(B) exception it seeks to satisfy.

Defendant filed an opposition to the State's 404(B) motion on July 10, 2023. In his opposition, defendant argued that the other crimes or bad acts evidence was

inadmissible as it was weak and only tangentially related to the case. He further argued that none of this evidence is necessary in order for the State to tell its story of what happened. Additionally, defendant averred that this evidence did not meet any of the narrow exceptions to the general prohibition against introducing evidence of a defendant's bad character, and that the prejudicial effect of this evidence greatly outweighs its probative value.[3]

Regarding other crimes evidence of defendant's prior misdemeanor conviction, defendant argued this evidence is not admissible to prove his motive for resisting arrest and shooting Detective Michel. Specifically, defendant argued that at no point during his interview with Sergeant Eserman did he claim that he resisted or shot Detective Michel because he was on probation and did not want to go to Orleans Parish prison on a probation violation. He averred that the argument that he was motivated to shoot Detective Michel due to his unsupervised probation for possession of stolen things is wholly speculative and unsupported by the evidence. Additionally, defendant noted that he pled guilty to the reduced charge of possession of stolen things under La. R.S. 14:69, and that the amended bill made no mention of a firearm. Also, the gun in the prior conviction was not found on his person, but in the trunk of his vehicle and could have belonged to any one of the other three occupants.

As to the evidence that defendant possessed a similar revolver in the days prior to the shooting of Detective Michel, defendant argued this evidence should be excluded because it does not prove a material fact genuinely at issue, its only probative force is repetitive and cumulative, and the evidence is more prejudicial than probative. Defendant argued that the possession of the gun and his identity as

---

[3]  In his opposition, defendant stated that Judge Brindisi previously granted the State's notice of intent. He noted that after Judge Miller was allotted to the case, the 404(B) hearing was reopened, and Judge Miller granted the State's notice of intent. He explained, however, that after Judge Miller was recused, this Court vacated her ruling and remanded for further proceedings.

23-K-477                                    6

the shooter are not at issue because witnesses identified him as the shooter, officers who arrested him a short distance from the scene seized the gun from him, and he admitted shooting Detective Michel with the gun. Additionally, defendant argued that possession of the same or a similar gun days prior to the offense is not integral act evidence. Defendant maintained that the State can present its case and the story of the crime without the necessity of admitting this evidence.

Concerning evidence that defendant had the intent to commit an armed robbery on the date of Detective Michel's shooting, defendant argued that Detective Michel and W19 were unaware of defendant's text messages and phone conversations regarding robbing "Putt" the day before and the morning of the shooting. He claimed that the text messages and phone calls were clear that he was talking about robbing "Putt," and that he acceded to W29 by telling him they were not going to rob "Putt." Further, defendant asserted that the reason he was walking down Manhattan Boulevard was to meet his friend, W29, and not to rob someone on Manhattan. He argued that the evidence does not support that he was acting suspiciously at the time Detective Michel stopped him, and that the text messages and phone calls with W29 and W33 do not provide evidence of how defendant was acting at the time he was walking down the street prior to the shooting. Defendant further argued that this evidence is cumulative and repetitive of direct evidence that he appeared suspicious, and is more prejudicial than probative. Specifically, defendant argued that the State offered evidence that Detective Michel reported that he was about to stop a black male at the same time W19 stated that defendant looked suspicious. According to defendant, the evidence of his desire to rob "Putt" was repetitive and cumulative of this direct evidence and an express bar to admissibility. Lastly, defendant argued the evidence does not support that he had a plan to rob "Putt" or anyone else on June 22, 2016, at the time of the shooting.

A two-day hearing was held on the State's 404(B) motion on August 22 and 23, 2023. At the hearing, the State argued that *Goffner* is inapplicable to the instant case as it stands for the proposition that one cannot dump a large volume of information on an attorney and then expect the attorney and the court to figure out what he will introduce, which is not what the State did in this case. The State asserted that *Goffner* involved a large amount of forensic evidence, unlike the instant case, and that here, the State clearly articulated what evidence it intended to introduce and the reasons therefore, as well as provided the documents that supported the factual allegations the State put forth in its notice.

The trial court found that the State's notice of intent was sufficient and that defendant had been given adequate notice of what the State intended to introduce pursuant to La. C.E. art. 404(B). The trial court admitted into evidence State's Exhibits 1 through 8. The trial court also admitted the following defense exhibits: Defense Exhibit 1, the full eight pages of the statement from W29; Defense Exhibit 2, the minute entry from June 14, 2016; Defense Exhibit 3, the transcript of the plea colloquy of June 14, 2016, in Orleans Parish Criminal District Court; Defense Exhibit 4, the transcribed statement of Dylan Pabst on June 22, 2016; and Defense Exhibit 5, a page from Detective Hollifield's transcript of evidence on May 18, 2018.

After hearing arguments of counsel, the trial court denied defense counsel's request to call witnesses at the hearing. The trial court stated that it was not going to have a mini-trial to determine whether different officers had different recollections regarding the stopping of defendant by Detective Michel. The trial court also denied defense counsel's request to call W19 as a witness.

In support of its contention that other crimes or bad acts evidence that defendant was planning to commit a robbery and that he was in possession of a gun is admissible, the State argued that no one could reach a conclusion based on the

statement of W19 alone as to what defendant had in mind when he was following W19. The State further argued that defendant was not innocently walking down the street, but rather, was an individual who had an intent to commit a crime of violence. The State pointed out that, in his statement, defendant claimed he did not intentionally shoot Detective Michel but, to the contrary, the other crimes or bad acts evidence show that defendant knew it was the police and that the shooting was not accidental or self-defense. According to the State, if the jury is deprived of this other crimes or bad acts evidence, defense counsel will argue that Detective Michel did not have legal grounds to stop defendant, and if this occurs, defense counsel is likely to have some degree of success.

At the close of the hearing on August 23, 2023, the district court granted the State's motion, finding that defendant had been given adequate notice of what the State intended to introduce, and ruled that the evidence of other crimes or bad acts listed by the State in its notice of intent was admissible at trial as *res gestae* (integral act evidence) under La. C.E. art. 404(B). The court stated that because the evidence was *res gestae*, a limiting instruction was not necessary.

Defendant timely filed the instant writ application on September 28, 2023, which he supplemented on October 2, 2023, seeking supervisory review of the district court's ruling.

**DISCUSSION**

In his writ application, defendant agues the district court erred in ruling that the other crimes or bad acts evidence is admissible at trial as *res gestae* or integral act evidence. Specifically, defendant avers the district court erred (1) in admitting evidence that defendant was previously convicted of possession of stolen things, to wit: a firearm; (2) in admitting evidence that defendant previously possessed the .38 Rossi revolver or a similar silver revolver in the days prior to the shooting; (3) in admitting evidence that defendant had the generic intent to commit an armed

robbery on the day of Detective Michel's death; and (4) in refusing to allow defendant to call witnesses that would have disputed the State's theories for admissibility of evidence that defendant had the intent to commit an armed robbery on the day of Detective Michel's death.

In response, the State maintains the district court did not abuse its discretion in finding that other crimes or bad acts evidence is admissible at trial as *res gestae* or integral act evidence since it tells a cohesive narrative such that (1) defendant, who was on probation for a crime involving a firearm, and who was prohibited from possessing firearms as a condition of his probation, willfully disregarded his probationary conditions by possessing a handgun; (2) defendant was lurking about seeking to rob someone; (3) Detective Michel intervened upon noticing defendant's suspicious behavior; and (4) defendant murdered Detective Michel because he did not want to go to jail for a probation violation, and also, possibly because Detective Michel frustrated his plan to commit a robbery that day. The State avers that although defendant is entitled to dispute the State's account at trial, he is not entitled to preemptively torpedo its presentation of its case. Alternatively, the State argues the evidence is admissible under the 404(B) factors. Further, citing *State v. Pierre*, 113-873 (La. 10/15/13), 125 So.3d 403, 408, the State argues that because it prevailed below, it is entitled to assert any ground fairly supported by the record as a basis for upholding the district court's ruling.

Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); *State v. Prieur*, 277 So.2d 126, 128 (La. 1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is a bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. *State v. Williams*, 10-51 (La. App. 5 Cir. 7/27/10), 47 So.3d 467, 474, *writ denied*, 10-2083 (La. 2/18/11), 57 So.3d 330.

Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad acts. La. C.E. art. 404(B)(1); *State v. Lawson*, 08-123 (La. App. 5 Cir. 11/12/08), 1 So.3d 516, 525. In *State v. Taylor*, 16-1124 (La. 12/1/16), 217 So.3d 283, 288, the Louisiana Supreme Court referred to La. C.E. art. 404(B) as "a non-exclusive list of instances wherein such evidence may be admissible."

In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. *Lawson*, 1 So.3d at 525-26. Moreover, the probative value of the other crimes evidence must outweigh the prejudicial effect. La. C.E. art. 403. In *Taylor*, *supra*, the Louisiana Supreme Court held that when seeking to introduce evidence pursuant to La. C.E. art. 404(B), the State need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. *Taylor*, 217 So.3d at 291. Evidence offered under La. C.E. art. 404 may include not only convictions, but also unadjudicated acts committed by the defendant. *State v. Wells*, 22-1191 (La. App. 1 Cir. 7/24/23), 2023 WL 4700585 (unpublished opinion; not designated for publication); *State v. Colbert*, 07-947 (La. App. 4 Cir. 7/23/08), 990 So.2d 76, 89, *writ denied*, 08-2098 (La. 5/15/09), 8 So.3d 579.[4]

Evidence that constitutes an integral part of the crime, formerly known as "*res gestae*," is admissible without any prior notice to the defense. *State v.*

---

[4]    *See also State v. Smith*, 19-607 (La. App. 5 Cir. 1/21/20), 2020 WL 356010, *writ denied*, 20-328 (La. 5/1/20), 295 So.3d 945, wherein this Court held that "[f]or purposes of La. C.E. art. 412.2, it is not necessary for the defendant to have been charged, prosecuted, or convicted of the 'other acts' described." Article 412.2 sets forth the law regarding evidence of similar crimes, wrongs, or acts in sex offense cases.

*Charles*, 00-1586 (La. App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity between the charged and uncharged conduct is required to ensure that "the purpose served by admission of the other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *Id.* (citing *State v. Colomb*, 98-2813 (La. 10/1/99), 747 So.2d 1074, 1076). The *res gestae* doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime, if a continuous chain of events is evident under the circumstances. *State v. Taylor*, 01-1638 (La. 1/14/03), 838 So.2d 729, 741, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004).

This Court recognized the following in *State v. Rhea*, 03-1273 (La. App. 5 Cir. 2/23/04), 868 So.2d 863, 867, regarding integral act evidence:

> The test for integral act (*res gestae*) evidence is, therefore, not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive the State's case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict."

*Id.* (citing *Colomb*, *supra*, quoting *Old Chief v. United States*, 519 U.S. 172, 187, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997)).

The defendant bears the burden to show prejudice by the admission of the other crimes evidence. *State v. Miller*, 10-718 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 187, *writ denied*, 12-282 (La. 5/18/12), 89 So.3d 1191, *cert. denied*, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013). Clearly, evidence of other crimes or bad acts is prejudicial since all evidence that tends to make it more probable

than not that an individual committed a criminal offense is necessarily prejudicial. The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. *State v. Williams*, 02-645 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 507, *writ denied*, 02-3182 (La. 4/25/03) 842 So.2d 398. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. *State v. Maize*, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 649, *writ denied*, 17-1265 (La. 4/27/18), 241 So.3d 306.

Here, the State filed a notice of intent to introduce evidence of (1) defendant's prior conviction for illegal possession of stolen things, to wit: a firearm; (2) evidence that defendant possessed a silver .38 Rossi revolver prior to the murder; and (3) defendant's intent to commit an armed robbery on the day of the murder. We find the district court's ruling that this evidence of other crimes or bad acts is admissible as *res gestae* or integral act evidence was not an abuse of discretion. Specifically, we find the evidence constitutes an integral part of the killing of Detective Michel to such an extent that the State could not accurately present its case without reference to the prior crimes or bad acts. Further, we find there is a close connection between the charged and uncharged conduct and that the presentation of this evidence will complete the story of the crime on trial by proving its immediate context of happenings near in time and place. Attempting to avoid mentioning this evidence would clearly deprive the State's case of narrative momentum and cohesiveness "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Colomb*, *supra*, 747 So2d at 1076.

After review of the transcripts of the hearings and the exhibits, we find that the State is entitled to present its case in its totality and defense counsel will have

ample opportunity to dispute this account at trial. We find that without this other crimes or bad acts evidence to complete the story of the crime, the jurors might believe that defendant was innocently walking down the street when he was illegally stopped by Detective Michel and that he thereafter resisted an unlawful arrest. We find that the record supports a finding that the State presented sufficient evidence at the hearing to show that defendant committed the prior crimes or bad acts. We further find that, considering the eight State exhibits and five defense exhibits that were admitted into evidence at the hearing, which included a police report and statements of defendant and other witnesses, the district court also did not abuse its discretion in denying defense counsel's request to call witnesses at the hearing.

For the foregoing reasons, finding the district court did not abuse its discretion in ruling that the other crime or bad acts evidence listed in the State's notice of intent will be admissible at trial as *res gestae* or integral acts evidence, we deny the writ.

**WRIT DENIED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 10, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-K-477

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
DARREN A. ALLEMAND (RESPONDENT)          THOMAS J. BUTLER (RESPONDENT)          ELLIOTT T. BROWN (RELATOR)
RICHARD J. BOURKE (RELATOR)

**MAILED**
CHRISTINE M. LEHMANN (RELATOR)          HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                          (RESPONDENT)
636 BARONNE STREET                       DISTRICT ATTORNEY
NEW ORLEANS, LA 70113                    TWENTY-FOURTH JUDICIAL DISTRICT
                                         200 DERBIGNY STREET
                                         GRETNA, LA 70053