WICKER, J.
Defendant, Christopher K. Garcie, appeals his conviction for four counts of attempted second-degree murder, one count of aggravated flight from an officer, and one count of illegal use of weapons by discharging a firearm from a motor vehicle located upon a public highway. Having pled guilty pursuant to a plea agreement wherein defendant reserved his appellate right under State v. Crosby , 338 So.2d 584 (La. 1976), to appeal the trial court's pretrial ruling granting the State's motion to admit other crimes evidence at the trial of defendant's case, defendant assigns as error the trial court's order granting the State's motion. For the reasons fully discussed herein, we affirm defendant's convictions and sentences and remand this matter to the district court for corrections of errors patent on the record.
PROCEDURAL HISTORY
In a bill of information filed on January 30, 20167, the Jefferson Parish District Attorney charged that, on November 29, 2016 while in Jefferson Parish, Mr. Garcie: (1) violated La. R.S. 14:30 and La. R.S. 14:27, in that he attempted to commit first-degree murder of Jefferson Parish Sheriff's Office ("JPSO") Deputies Jason Loerwald, *1282 Jerome Green, Todd Bordelon and Michael Jones; (2) violated La. R.S. 14:108.1(C), in that Mr. Garcie intentionally refused to bring a vehicle to a stop, under circumstances wherein human life was endangered, knowing he had been given a visual warning and an audible signal to stop by Deputy Bordelon when the officer had reasonable grounds to believe that defendant had committed an offense; and (3) violated La. R.S. 14:94(E), in that Mr. Garcie intentionally, or in a criminally negligent manner, discharged a firearm from a motor vehicle located upon a public highway, with the intent to injure, harm, or frighten another human being. At his arraignment on February 3, 2017, Mr. Garcie pled not guilty and not guilty by reason of insanity to all charges. No motion to appoint a sanity commission or for mental examination was filed, and no sanity hearing was held to determine Mr. Garcie's mental capacity to stand trial or to assist counsel in his defense. On August 4, 2017, the State filed a notice of intent to admit evidence of other acts as res gestae under La. C.E. art. 404(B), to which Mr. Garcie responded by filing a written objection. Following a hearing on August 28, 2017, the trial judge ruled that other evidence leading up to the police chase would be admissible at trial.
On September 19, 2017, pursuant to a negotiated plea agreement, the State amended the attempted first-degree murder charges to four counts of attempted second-degree murder, in violation of La. R.S. 14:30.1 and La. R.S. 14:27.[1] On that same date, Mr. Garcie entered pleas of guilty under State v. Crosby , supra, to the amended charges of attempted second-degree murder,[2] withdrew his previous pleas of not guilty and pleaded guilty as charged to aggravated flight from an officer and illegal use of a firearm, and reserved his right to appeal the granting of the State's notice of intent to admit evidence of other acts as res gestae .
After the trial court advised Mr. Garcie of his rights and Mr. Garcie waived these rights to the court's satisfaction, the trial court accepted Mr. Garcie's guilty pleas. Mr. Garcie then waived sentencing delays and, accordingly, the trial court sentenced him to serve concurrent sentences of imprisonment at hard labor for fifteen years on the four counts of attempted second-degree murder, without benefit of probation, parole, or suspension of sentence; imprisonment at hard labor for five years on the one count of aggravated flight from an officer; and, imprisonment at hard labor for ten years for the one count of an illegal use of a firearm, without benefit of probation or suspension of sentence, with credit for time served. The trial court also imposed various fines and fees. Defendant now appeals.
FACTUAL BACKGROUND
Because Mr. Garcie pled guilty, the underlying facts were not fully developed in the record and are largely gleaned from the police report upon which the State relied in seeking admission of other crimes evidence. According to the police report, the charged offenses committed by Mr. Garcie in Jefferson Parish were committed on November 29, 2016, after Mr. Garcie engaged in the following criminal activity in St. Tammany Parish:
On Tuesday, November 29, 2016, at approximately 2130 hours, Deputies Troy White and Walter Eason were dispatched *1283 to Rouses Food Market, located at 3461 East Causeway Boulevard, in Mandeville, Louisiana, in reference to an aggravated kidnapping. Deputies arrived at approximately 2139 hours, coming into contact with Mandeville Police Officer Derek Dondeville. Officer Dondeville reported, under his case number 1611-1084, the following:
A white female subject... made contact with Rouses employees and requested they dial 911. [The female subject][3] stated she had been kidnapped and escaped in the rear parking lot of the business. The suspects [sic] vehicle had been BOLO'd[4] and was currently being pursued by the Mandeville Police Department, southbound, on the Causeway Bridge. The victim... was secured in the rear of Officer Dondevilles [sic] patrol unit.
Deputy Eason relocated to Officer Dondevilles [sic] patrol unit where he came into contact with [the female subject]. Deputy Eason observed a zip tie strap on her left wrist and small cuts on her wrists and feet. [The subject] reported the following:
[The female subject] met with a man, identified as Christopher Garcie, on the website www.backpage.com. A bargain was made to meet Mr. Garcie at [an address] in Lacombe, Louisiana, for the price of $400.00. Mr. Garcie approached [the female subject's] vehicle upon
her arrival at the location in Lacombe. He brandished a firearm and ordered her to exit the vehicle. Mr. Garcie identified himself as a Federal Agent and forced [the female subject] inside the residence. While inside he struck her in the back of the head, with the firearm, and bound her hands with zip ties behind her back. Mr. Garcie proceeded to force [the female subject] into the front passenger seat of his vehicle where they traveled west towards Mandeville, Louisiana. While traveling [the female subject] was able to free her hands and wait for an opportunity to escape. Mr. Garcie entered the Rouses rear parking lot where he slowed the vehicle's speed. [The female subject] jumped from the moving vehicle and ran towards other citizens screaming, "help, I've been kidnapped." [The female subject] was escorted into the store, by an unidentified white male subject, where she was able to dia1 911. [The female subject] described the vehicle as a white colored pickup truck pulling a box shaped trailer.
Emergency medical services were dispatched to the scene. Fire district # 4 later arrived and [the female subject] refused treatment. Deputy Eason relocated to the rear parking lot of Rouses, and located a black colored bag along with a face mask. [The female subject] alleged that the face mask was utilized as a blind fold and that the bag had fallen out of the vehicle during her escape.
* * * * * * * *
According to Mr. Garcie's brief on appeal, following the BOLO alert that had been issued for him in St. Tammany Parish, law enforcement officers from multiple jurisdictions located his vehicle traveling southbound toward Jefferson Parish. Mr. Garcie's brief further avers that, based on the BOLO, the officers attempted to conduct a stop of his vehicle, but he refused and, instead, led the law enforcement officers on a high speed chase into Jefferson Parish, during which he allegedly fired *1284 several shots from his vehicle towards the pursuing police units. Mr. Garcie was ultimately apprehended and charged.
ASSIGNMENT OF ERROR
In his sole assignment of error on appeal, Mr. Garcie challenges the trial court's ruling granting the State's motion to admit other crimes evidence under La. C.E. art. 404(B).
DISCUSSION
In support of his contention that the trial court erred, Mr. Garcie argues that none of the other crimes leading up to the high speed chase (i.e. , crimes related to the escort, including setting up a date with the female subject in order to kidnap her, impersonating a federal agent, striking her with a firearm, tying her up with zip ties, and kidnapping her), are part of the res gestae of his fleeing from law enforcement officers on the Causeway bridge. Specifically, Mr. Garcie claims that the escort was out of his vehicle when he fled and failed to stop for police, and that the discharge of his firearm occurred in a completely different parish. Mr. Garcie claims that the jury did not need to know the specific facts of the prior crimes for which the BOLO was issued in order to understand the police chase and Mr. Garcie's shooting of his firearm at the police. Mr. Garcie contends that even if the other crimes are found to be necessary for the State to cohesively present its case, the State could have presented the fact that he was suspected of committing an aggravated kidnapping and impersonating an officer, as opposed to presenting all of the disturbing details of the alleged crime, which invariably would inflame and prejudice the jury. According to Mr. Garcie, even if the other acts are determined to be part of the res gestae , the probative value of the admission of the other crimes is outweighed by the unfair prejudice. Consequently, Mr. Garcie contends that the admission of the other crimes evidence would impede his ability to receive a fair trial and, because the evidence should have been excluded, his guilty pleas should be set aside and the convictions and sentences reversed.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1) ; State v. Prieur , 277 So.2d 126, 128 (La. 1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Williams , 10-51, p. 15 (La. App. 5 Cir. 7/27/10), 47 So.3d 467, 47 So.2d 467, 474. Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad acts. La. C.E. art. 404(B)(1) ; State v. Lawson , 08-123, p. 18 (La. App. 5 Cir. 11/12/08), 1 So.3d 516, 525.
In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. Lawson , 08-123, p. 19, 1 So.3d at 525-26. Moreover, the probative value of the extraneous evidence must outweigh the prejudicial effect. La. C.E. art. 403.
Evidence that constitutes an integral part of the crime, formerly known as "res gestae ," is admissible without any prior notice to the defense. State v. Charles , 00-1586, p. 6 (La. App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity between the charged and uncharged *1285 conduct is required to ensure that "the purpose served by admission of the other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Id. citing State v. Colomb , 98-2813, p. 6 (La. 10/1/99), 747 So.2d 1074, 1076. This Court recognized the following in State v. Rhea , 03-1273, p. 9 (La. App. 5 Cir. 2/23/04), 868 So.2d 863, 867 :
The test for integral act (res gestae) evidence is, therefore, not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive the State's case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences,
whatever they may be, necessary to reach an honest verdict."
Id. citing State v. Colomb , 98-2813, p. 4, 747 So.2d at 1076, quoting Old Chief v. United States , 519 U.S. 172, 187, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997).
The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. State v. Miller , 10-718, p. 17 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 187. Clearly, evidence of other crimes or bad acts is prejudicial since all evidence that tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial. The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. State v. Williams , 02-645, p. 16 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 507. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La C.E. art 404(B)(1) will not be disturbed. State v. Maize , 16-575, pp. 27-28 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 649.
In the instant case, Mr. Garcie was originally charged with four counts of attempted first-degree murder in violation of La. R.S. 14:30 and La. R.S. 14:27.[5] This crime requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Alsay , 11-562, p. 10 (La. App. 5 Cir. 12/13/11), 81 So.3d 145, 149. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. Alsay , 11-562, p. 11, 81 So.3d at 148.
Mr. Garcie was also charged with aggravated flight from an officer in violation of La. R.S. 14:108.1(C), which likewise requires proof of specific intent,[6] and with *1286 discharging a firearm from a motor vehicle located upon a public highway in violation of La. R.S. 14:94(E).[7] An understanding of the elements of the latter crime requires an evaluation of La. R.S. 14:94(A), which defines the illegal use of weapons or dangerous instrumentalities as the "intentional or criminally negligent discharging of any firearm ... where it is foreseeable that it may result in death or great bodily harm to a human being." See La. R.S. 14:94(A). Again, proof of specific intent is required.
In State v. Edwards , 406 So.2d 1331, 1350-1351 (La. 1981), cert. denied , 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982), the Louisiana Supreme Court held that other crimes evidence was properly admitted during the defendant's murder trial pursuant to the res gestae exception, noting that the evening's sequence of events formed "one continuous transaction," during which the murder with which the defendant was charged took place, and "without such evidence, the complete story of the crime could not be told." Id. at 1351, citing State v. Curry , 325 So.2d 598, 602 (La. 1976). During the defendant's murder trial, the court admitted evidence that on the evening in question the defendant and an accomplice discussed "making a hit" with a third party, stole alcohol from a grocery, went to the victim's home where they stole coins and stabbed the victim to death and sped away in the victim's vehicle, agreed to a further hustle, and followed a woman to the LSU campus-intending to steal her purse-abandoned that effort and entered a 7-11 convenience store, intent upon another "hustle" at which point they were arrested. Id.
Similarly, in State v. Taylor , 01-1638, pp. 15 (La. 1/14/03), 838 So.2d 729, 740, cert. denied , 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004), the defendant, who was convicted of first-degree murder and sentenced to death, challenged the trial court's admission of evidence relative to his involvement in crimes committed after the charged offense. The Louisiana Supreme Court discussed at length the admissibility of a seven-day crime spree, which involved dozens of crimes through several states, including the defendant's kidnapping and murder of a victim in Louisiana, stating that "under the rule of narrative completeness incorporated in the res gestae doctrine 'the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.' " Id. , 01-1638, p. 12, 838 So.2d at 743, quoting Old Chief v. United States , 519 U.S. 172, 188, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).
In State v. Carter , 15-99 (La. App. 5 Cir. 7/29/15), 171 So.3d 1265, the defendant committed several armed robberies at various Advanced Auto Parts and Radio Shack stores located in Jefferson Parish. The State sought to introduce evidence that the defendant had committed another armed robbery at a Radio Shack store located in Mobile, Alabama in order to *1287 show the logical sequence of steps taken by law enforcement, which ultimately connected the defendant to the armed robberies for which he was being prosecuted. In affirming the trial court's admission of the other crimes evidence under the res gestae doctrine, this Court noted that the evidence "was integral act evidence that was relevant to show how law enforcement was able to develop the defendant as a suspect in the Jefferson Parish robberies." Id. , 15-99, p. 33, 171 So.3d at 1280.
Additionally, in State v. Rhea , supra , the defendant argued that evidence of other crimes committed in Orleans Parish that preceded the attempted second-degree murder for which he was being prosecuted should have been excluded as unduly prejudicial. Rhea , 03-1273, p. 9, 868 So.2d at 867. Relying on the Supreme Court's discussion of the admission of res gestae evidence in State v. Edwards , supra , this Court noted that the attempted second-degree murder of the victim did not occur in a vacuum. Specifically, the crime spree commenced with the kidnapping of the victim and culminated in her attempted murder. In affirming the trial court's admission of the evidence, this Court determined that "the events were so intertwined with the attempted murder that the State could not have told the complete story to the jury without evidence of these events." Rhea , 03-1273, p. 12, 868 So.2d at 868.
Similar to Edwards , Taylor , Carter and Rhea , in the instant case, Mr. Garcie was involved in a crime spree. The initial criminal acts Mr. Garcie committed against the victim in St. Tammany Parish formed part of a continuous chain of events culminating in the commission of the crimes for which he was being tried in Jefferson Parish. The kidnapping victim's explanation to law enforcement officers of the harrowing events of the evening, and the description she provided of her attacker and his vehicle, resulted in the officers being on the lookout for the perpetrator. Further, because of the other crimes, law enforcement was able to focus on Mr. Garcie and conduct a traffic stop of his vehicle.
As in Carter and Rhea , we find that the trial court properly admitted evidence of the preceding crimes committed by Mr. Garcie, as presentation of the res gestae evidence was necessary in order for the State to logically present its case, to explain why the officers focused on Mr. Garcie's vehicle, and to place the actions of law enforcement in the proper context. A close connexity existed between the preceding crimes and the charged conduct ensuring that the purpose served by admission of the other crimes evidence was to complete the story of the crimes on trial by proving the immediate context of happenings in time and place, rather than to depict Mr. Garcie as a bad man. See Charles , 00-1586, p. 6, 790 So.2d at 708. As an element of the offense of attempted first-degree murder, the State had to prove that Mr. Garcie had the specific intent to kill the law enforcement officers during their pursuit of him in order to evade the consequences of his earlier criminal actions. Additionally, the other crimes evidence was admissible to prove, as an element of the offense of aggravated flight from an officer, that the officers had reasonable grounds to believe that Mr. Garcie had committed an illegal offense. See Carter , 15-99, p. 33, 171 So.3d at 1280.
Furthermore, despite Mr. Garcie's contentions to the contrary, the fact that the integral acts occurred in St. Tammany Parish, and not in Jefferson Parish where the charged offenses were committed, does not preclude the admission of the other crimes evidence pursuant to La. C.E. 404(B)(1). See Taylor , Carter and Rhea , supra . Lastly, based on the foregoing, although the evidence of the other crimes committed by Mr. Garcie is prejudicial, as *1288 evidence of other crimes is always prejudicial, we find the probative value of the challenged evidence is high and that its relevance is not substantially outweighed by a danger of unfair prejudice.
For the foregoing reasons, we do not find that the trial court erred by granting the State's notice of intent and deeming the evidence of other crimes admissible. This assignment of error is without merit.
ERRORS PATENT DISCUSSION
As is our routine practice, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux , 312 So.2d 337 (La. 1975), and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990). We found several patent errors, not all of which require correction. Nonetheless, we discuss each patent error separately for the sake of completeness.
Ambiguity in the Imposition of Sentence for Counts One through Four
Pursuant to the transcript, once Mr. Garcie waived all sentencing delays, the trial judge commenced sentencing him as follows: "As to each of the first four counts, you will be sentenced to 15 years at hard labor in the Department of Corrections." The trial judge also sentenced Mr. Garcie on counts five and six, with all of those sentences to "run concurrently with each other." Following a brief bench conference, the trial judge stated:
All right. Let me start over again. In accordance with the Code of Criminal Procedure Article 894.1 as to Counts 1, 2, 3, and 4, the sentence will be 15 years at hard labor in the Department of Corrections. That will be served without benefit of probation, parole, or suspension of sentence.
Thus, although the trial judge initially sentenced Mr. Garcie on each of the first four counts, he did not specifically do so when he "start[ed] over again." At that time, the transcript suggests that the trial judge sentenced Mr. Garcie to one fifteen-year sentence for all four counts of attempted second-degree murder.
The trial court must impose a separate sentence for each count on which a defendant is convicted. State v. Collins , 04-751, p. 6 (La. App. 5 Cir. 11/30/04), 890 So.2d 616, 620. While the trial court's failure to impose a sentence for each count is considered a patent sentencing error, an exception exists to the general rule:
When the sentences for a conviction on each count would more appropriately be concurrent rather than consecutive,
and the term for the imprisonment is reasonable under the circumstances, the single sentence will not affect the substantial rights of the defendant, and remand for clarification or resentencing is not necessary.
State v. Hebert , 02-1252, pp. 13-14 (La. App. 5 Cir. 4/8/03), 846 So.2d 60, 66. Article 883 of the Louisiana Code of Criminal Procedure provides that sentences for two or more convictions based on the same transaction, or constituting parts of a common scheme or plan, are to be served concurrently, unless the trial court expressly directs that some or all be served consecutively.
In the present case, all of Mr. Garcie's convictions were based on a single, though lengthy, incident. Moreover, the sentencing transcript reflects that the trial judge apparently intended to sentence Mr. Garcie to fifteen years at hard labor on each count, since he initially did so. Additionally, the trial judge ordered that all of Mr. Garcie's convictions were to be served concurrently in accordance with the plea agreement. Further, the Uniform Commitment Order ("UCO") indicates that, as to counts one through four, Mr. Garcie was sentenced to fifteen years on each count, "concurrent." Accordingly, we find no need to remand the matter for *1289 clarification or resentencing on counts one through four.[8]
Inconsistency/Commitment and UCO
In our review for errors patent, we have found inconsistencies between the transcript and the commitment and UCO. The commitment reflects that the five-year sentence on count five was imposed without benefit of probation or suspension of sentence, but the transcript does not reflect that the sentence on count five was imposed without benefits. Moreover, the waiver of rights form does not indicate that count five was to be imposed without benefits. Similarly, while the transcript reflects that the ten-year sentence on count six was imposed without benefit of probation or suspension of sentence, the commitment does not reflect that the sentence on count six was imposed without benefit of probation or suspension of sentence. Also, the waiver of rights form indicates that the sentence on count six was to be imposed without benefit of probation or suspension of sentence. To the extent that the minute entry or commitment is inconsistent with the transcript, the transcript prevails. State v. Ford , 11-91, p. 6 (La. App. 5 Cir. 12/13/11), 81 So.3d 841, 844, citing State v. Lynch , 441 So.2d 732, 734 (La. 1983).
Additionally, the UCO reflects that the offense date was November 29, 2016, on all counts. However, in the transcript, when providing the factual basis, the State said that the offenses occurred more generally *1290 on or about November 29, 2016.[9] As previously noted, the transcript prevails. See Ford , supra.
Accordingly, we remand this matter to the trial court with instructions to correct the commitment and the UCO as noted in order that they conform to the transcript. Further, we direct the 24th Judicial District Court Clerk of Court to transmit the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department.
Post-Conviction Relief Advisal
Although the commitment reflects that the trial judge properly advised Mr. Garcie of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8, the transcript indicates the trial judge gave conflicting information. Specifically, the transcript reveals that, initially, the trial court advised Mr. Garcie that "any post-conviction relief applications must be filed within two years of the date that the sentence becomes final." However, later on during the colloquy, the trial judge correctly advised Mr. Garcie that he had "two years after the judgment of conviction and sentence become final in which to seek post-conviction relief." Additionally, the waiver of rights form reflects that Mr. Garcie was incompletely advised that any post-conviction relief applications must be filed within two years of the date the sentence becomes final. It is well-settled that if a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely , 08-707, p. 15 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538 ; State v. Taylor , 12-25, p. 37 (La. App. 5 Cir. 6/28/12), 97 So.3d 522, 538 ; and State v. Brooks , 12-226, p. 19 (La. App. 5 Cir. 10/30/12), 103 So.3d 608, 615.
Accordingly, because he received conflicting information, we advise Mr. Garcie by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
DECREE
For the reasons set forth herein, we find the trial judge did not err in granting the State's notice of intent to introduce evidence of other acts committed by Mr. Garcie as res gestae . Consequently, Mr. Garcie's convictions and sentences are affirmed. This matter is remanded for the limited purpose: (1) of correcting the commitment to delete the probation or suspension of sentence restriction from Mr. Garcie's five-year sentence on count five; (2) of correcting the commitment to include "without benefit of probation and suspension of sentence" restriction to Mr. Garcie's ten-year sentence on count six; (3) of correcting the commitment to conform to the transcript; (4) of correcting the Uniform Commitment Order to reflect an offense date of "on or about November 29, 2016," in conformity with the transcript; and (5) to transmit the corrected commitment and UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department.
*1291 DEFENDANT'S CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS

The State also agreed to refrain from filing a multiple offender bill against defendant.

There is no indication in the record that Mr. Garcie withdrew his pleas of not guilty and not guilty by reason of insanity to the original charges on four counts of attempted first-degree murder.

Because the victim of the aggravated kidnapping is not a victim in a charged count in the instant case, she has been referred to as "the female subject."

In the notice of intent, the State indicated that the acronym, "BOLO," stands for "be on the lookout."

First-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties, including deputy sheriffs and local or state policemen. La. R.S. 14:30(A)(2), (B)(1). "Attempt" is defined as "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]" La. R.S. 14:27(A).

La. R.S. 14:108.1(C) defines aggravated flight from an officer as:
[T]he intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.

La. R.S. 14:94(E) provides:
Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm from a motor vehicle located upon a public street or highway, where the intent is to injure, harm, or frighten another human being, shall be imprisoned at hard labor for not less than five nor more than ten years without benefit of probation or suspension of sentence.

In this case, where Mr. Garcie originally pleaded not guilty and not guilty by reason of insanity to all charges, it was error for the trial court not to query Mr. Garcie during the plea colloquy regarding his original plea of not guilty by reason of insanity (a plea that, according to the record, was not withdrawn), and whether, in the face of that original insanity plea, Mr. Garcie was able to understand the nature of the proceedings and the ramifications of his desire to change his plea to guilty. It was also error for the trial court not to query defense counsel as to whether, given his interactions with Mr. Garcie, he discerned any mental incapacity or deficiency that would render Mr. Garcie either incompetent at the time of the offense or unable to understand the nature of the proceedings and assist counsel in his defense. A thorough review of the record, however, including the interaction between the trial judge and Mr. Garcie during the plea colloquy, and extensive research of the applicable law, convinces us that the error was harmless. A defendant in a criminal case is presumed sane and responsible for his actions and the defendant bears the burden of proving otherwise. The standard of proof is by a preponderance of the evidence and the defendant must show that it was more probable than not that he lacked mental capacity to enter the guilty plea. State v. Tranchant , 10-459, p. 10 (La. App. 5 Cir. 11/23/10), 54 So.3d 730, 734. Here, Mr. Garcie never requested that a sanity commission be appointed or moved for a mental examination to be conducted. Additionally, there is no evidence in the record from which we can discern that either the trial court or defense counsel had evidence, however insubstantial, which would have incited the need for investigation into whether Mr. Garcie was either unable to understand the nature of the proceedings or to assist defense counsel in his defense. Also, during the plea colloquy, Mr. Garcie gave no indication or reason to believe that he was incompetent to proceed. Both the transcript and the colloquy, as well as the waiver of rights form executed by Mr. Garcie, show that he was fully advised of his constitutional rights, the nature of the crimes charged, and the consequences of his guilty plea. Further, his responses during the colloquy, and his apparent behavior throughout the proceedings, indicate that he fully understood his rights and the consequences of entering a guilty plea. For these reasons, we are satisfied and able to conclude that Mr. Garcie understood the nature of the proceedings, including the consequences attendant to changing his plea to guilty, and was able to assist counsel. Accordingly, the trial court's error in failing to question Mr. Garcie during the plea colloquy regarding his original plea of not guilty by reason of insanity prior to accepting his guilty plea was harmless. See State v. Willie , 17-252 (La. App. 5 Cir. 12/20/17), 235 So.3d 1339.

The State alleged in the amended bill of information that count one occurred on or about November 29, 2016, and that counts two through five occurred on November 29, 2016.