STATE OF LOUISIANA

VERSUS

KEVIN JOHNSON

NO. 22-KA-383

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 18,669, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

August 09, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Cornelius E. Regan, Pro Tempore

**CONVICTION AFFIRMED; ENHANCED SENTENCE VACATED;**
**REMANDED FOR RESENTENCING**

   **SJW**
   **JGG**
   **CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Jeffrey M. Landry
    J. Taylor Gray
    Marko Marjanovic

COUNSEL FOR DEFENDANT/APPELLANT,
KEVIN JOHNSON
    Prentice L. White

**WINDHORST, J.**

Defendant, Kevin Johnson, appeals his conviction for distribution of methamphetamine. For the reasons that follow, we affirm relator's conviction, vacate his enhanced sentence, and remand for resentencing.

**PROCEDURAL HISTORY**

On January 15, 2019, the St. Charles Parish District Attorney's Office filed a bill of information charging defendant with distribution of methamphetamine, in violation of La. R.S. 40:967 A(1). At his arraignment, defendant pled not guilty.

On November 10, 2021, a six-person jury unanimously found defendant guilty as charged. On February 15, 2022, defendant filed a motion for new trial, which the trial court denied. On February 16, 2022, the State filed a habitual offender bill of information, alleging defendant was a fourth-felony offender, to which defendant pled not guilty. On May 2, 2022, after a contradictory hearing, the trial court adjudicated defendant a fourth-felony offender pursuant to La. R.S. 15:529.1. The trial court sentenced defendant as a fourth-felony offender to sixteen years imprisonment at hard labor without the benefit of probation or suspension of sentence under State v. Dorthey, 623 So.2d 1276 (1993).[1]

The State filed a notice of intent seeking supervisory review of the trial court's deviation from the mandatory minimum sentence for a fourth-felony offender. The State's writ application is before this court in companion case number 22-KH-300.[2] Defendant filed the instant appeal challenging only his conviction.

---

[1] The trial court imposed only the enhanced habitual offender sentence on May 2, 2022. La. R.S. 15:529.1 D(3) requires a trial court to vacate a defendant's previous sentence only "if already imposed" before sentencing him as a habitual offender. State v. Turner, 09-1079 (La. App. 5 Cir. 07/27/10), 47 So.3d 455, 460 n.8; State v. Bell, 00-1084 (La. App. 5 Cir. 02/28/01), 781 So.2d 843, 845, writ denied, 01-776 (La. 04/26/02), 813 So.2d 1098. Here, sentence on the underlying offense was not already imposed.

[2] Defendant filed a motion to dismiss or alternatively, motion for consolidation, seeking to dismiss the State's writ application. For the reasons stated in State v. Johnson, 22-300 (La. App. 5 Cir. 08/09/23), — So.3d —, this court denied defendant's motion and maintained this court's previous designation of these cases as companion.

**FACTS and EVIDENCE**

On October 30, 2018, Detective Harold Kingsmill and two other detectives, Detective Daniel April and Detective Alan Tabora, with the St. Charles Parish Sheriff's Office ("SCPSO") conducted a traffic stop on Ashton Road after observing a turn signal violation. The driver was identified as Kadrina Tappan and Detective Kingsmill discovered she had an outstanding attachment for her arrest for a missed court date. Ms. Tappan was advised of her Miranda[3] rights. Ms. Tappan provided consent to search her vehicle and voluntarily informed the detectives that she had clonazepam pills in her vehicle. A search revealed four clonazepam pills in the vehicle and Ms. Tappan admitted she did not have a prescription for the pills. To avoid going to jail, Ms. Tappan agreed to become a confidential informant ("CI") and assist the SCPSO with narcotics investigations. Consequently, Ms. Tappan was not arrested on the attachment or for the clonazepam pills. The following day, Ms. Tappan filled out a CI packet at the SCPSO and provided a list of potential targets, including defendant, from whom she could purchase narcotics. Ms. Tappan became a CI for the SCPSO in this case and in another case concerning a different target.[4]

Detectives Kingsmill and April testified that on November 6, 2018, Ms. Tappan was given audio-visual equipment and currency in the amount of $125.00 to purchase narcotics from defendant.[5] The detectives conducted a search of Ms. Tappan's person and her vehicle prior to the controlled buy and followed her to defendant's residence. Detective Kingsmill testified that while monitoring the transaction through the audio-visual equipment, he witnessed what he believed was a hand-to-hand transaction between defendant and Ms. Tappan. Subsequent to the

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[4] Detective Kingsmill testified that Ms. Tappan "worked her charge off" for the clonazepam pills by participating in the controlled buy involving a different target.

[5] The expense form showed that Ms. Tappan was given $175.00 on the day of the controlled buy. Detective Kingsmill testified that the money covered the purchase of narcotics from defendant, as well as a $50.00 payment to Ms. Tappan to pay off her open attachment.

transaction, Ms. Tappan departed defendant's residence and met with the detectives at a predetermined location, where she immediately provided the alleged narcotics. Another search of her person and vehicle was conducted and afterwards, the detectives retrieved the audio-visual equipment. Detective Kingsmill testified that Ms. Tappan did not provide them with any currency because it was used to purchase the narcotics. He stated that a field test showed that the substance was methamphetamine and it weighed 3.05 grams.

Detective Daniel April testified that CI's generally have a criminal history, use drugs, and are used in attempts to purchase narcotics from drug dealers. In exchange for cooperating with a narcotics investigation, CI's are afforded the opportunity to "work off" charges. Detective April testified that defendant was not immediately arrested after the narcotics transaction because Ms. Tappan was also involved as a CI in another investigation. Defendant was subsequently arrested during a traffic stop on November 26, 2018. Detective April stated that he was familiar with defendant, who he identified in open court, and that he had previously been to defendant's residence located at 1021 Paul Frederick Street in Luling. He testified that defendant had convictions for possession of cocaine in 2006 and 2012 and distribution of cocaine in 2015, and that he was involved in the investigations which resulted in defendant's 2012 and 2015 convictions.

Ms. Tappan testified that she became a CI for the SCPSO after four clonazepam pills were discovered in her vehicle during a traffic stop. At the time, she was on probation and to avoid going to jail, she agreed to become a CI.[6] She testified that she signed a CI contract with the SCPSO and she provided defendant's name as a potential target. She testified that she used drugs for twelve years and that

---

[6] Ms. Tappan testified that she has had previous attachments for her arrest and she also has convictions for possession of methamphetamine, simple battery, and making a false police report. As to the conviction for making a false police report, she admitted she lied to police about her fiancé trying to strangle her. She testified that she was "high as a kite" and lied to get her fiancé removed from her house. She testified that when she "sobered up," she came forward and admitted to the police that she had lied.

she has used crack cocaine, methamphetamine, Xanax, and ecstasy. She stated that she met defendant through a friend and began purchasing drugs from him in 2017 or 2018. Initially, she bought crack cocaine from defendant every day, but then she quit using crack cocaine. She was told she could go to defendant for methamphetamine, which she bought from him a "couple of times. Not very often." She testified that on November 6, 2018, she bought three grams of methamphetamine from defendant for $125.00 dollars.[7]

Ms. Tappan testified that while the detectives were present, she set up the controlled buy with defendant through Facebook Messenger and negotiated a price for the methamphetamine while on speakerphone. Prior to meeting defendant, the detectives searched her person and vehicle for narcotics, she was given money to purchase the narcotics, and outfitted with audio-visual equipment. As instructed, she drove straight to defendant's residence. Upon arrival, she asked to go inside defendant's residence because she did not feel comfortable conducting the transaction outside. She testified that she had the money to buy the methamphetamine in her hand with her keys. Once inside, defendant placed the methamphetamine on the counter. Ms. Tappan testified that although you cannot see it on the surveillance video, you can hear her keys drop on the counter. At that time, she also placed the money on the counter because it was in her hand with her keys. Ms. Tappan testified that although defendant did not ask "where's my $125" nor did he physically place the narcotics in her hand, he did tell her to "check it out" before she left with it. She thanked him, picked up the methamphetamine and her keys and left, leaving the money on the counter.

---

[7] She testified that she was also given $50 to remove an open attachment. On cross-examination, Ms. Tappan admitted that she was arrested for failing to appear for a traffic ticket on December 10, 2018, *after* this narcotics transaction, and was found in contempt of court. However, despite defense counsel's contention to the contrary, she believed that the $50 she received for payment as a CI went toward a different ticket, not the December 10, 2018 ticket, because she had several tickets.

Ms. Tappan testified that she drove straight to meet the detectives and she immediately handed over the narcotics she received from defendant. Another search of her person and vehicle was performed and then the detectives retrieved the audio-visual equipment. Ms. Tappan denied using any narcotics at defendant's residence the day before or the morning of the narcotics transaction with defendant. She further testified that she did not leave or plant the narcotics at defendant's residence. Ms. Tappan testified that she has been "clean" for three years, since she signed the CI contract with the SCPSO. Ms. Tappan identified defendant in open court and on the surveillance video.

A video of the November 6, 2018 narcotics transaction was played for the jury.[8] Detective April testified that he and Detectives Tabora and Kingsmill monitored the narcotics transaction on a device in "real-time moment" in their vehicle at a nearby location. The video shows that Ms. Tappan entered defendant's residence and defendant sat down on a chair by a countertop. As the video continued playing for the jury, Detective April testified that while speaking to someone on his cell phone, defendant placed a clear plastic bag of a "crystal-like substance" on the countertop. In the video, defendant gave Ms. Tappan a "fist pump" and a "thumbs-up." Detective April testified that in his experience, those actions signify that "the transaction's complete; we're good." Detective April conceded that you could not see an exchange of currency between defendant and Ms. Tappan in the video. Ms. Tappan, however, testified that she had the money and her keys in her hand when she entered the residence. Ms. Tappan testified that when defendant placed the narcotics on the counter, you can hear in the video her keys dropping on the counter. She stated that the money was with her keys when she placed them down. After

---

[8] Two videos were played to the jury, one in black and white and the other in color.

22-KA-383                                   5

thanking defendant, she grabbed her keys and walked out of his residence, leaving the money behind.

Brian Schulz, an expert in the field of analysis and identification of controlled dangerous substances with the Jefferson Parish Sheriff's Office Crime Lab, testified that he tested the substance from the controlled buy in this case. He testified that the substance tested positive as methamphetamine and the net weight of the methamphetamine was two grams. Mr. Schultz testified that net weight is the weight of the material without the packaging it came in. He testified that most suspected narcotics weighed in the field by law enforcement officers are weighed with "the packaging that it's collected in." He explained that accordingly, his calculated net weight can be different from the law enforcement officer's field-tested weight.

Defendant testified that he developed a drug addiction while in the military. He admitted he was convicted of possession of cocaine in 2006 and in 2012 and distribution of cocaine in 2015.[9] He stated that throughout the ten years that he knew Ms. Tappan, they would periodically use drugs together. Defendant testified in November of 2018, around 6:30 A.M.,[10] Ms. Tappan was at his residence smoking methamphetamine while he smoked crack cocaine.[11] Defendant testified that upon her request, he allowed Ms. Tappan to leave her drugs with him and return later for her "package." He stated that he did not speak with Ms. Tappan on Facebook Messenger or on the phone about purchasing methamphetamine for $125.00. He testified that Ms. Tappan did not leave any money for her drugs and he denied

---

[9] Defendant emphasized that that he pled no contest to the charge of distribution of cocaine in 2015. He stated that an undercover agent purchased drugs from another street dealer, who said that he left his drugs at defendant's residence. He asserted that the dealer was not going to purchase drugs from him. During cross-examination, a jail call was played for the jury, wherein the State alleged to the jury that defendant admitted to the distribution of cocaine charge. In response, defendant testified that he was only telling the other party on the phone about the information he read from the police report and from his lawyer, not that he admitted distributing crack cocaine.

[10] Defendant testified that the time was 6:30 A.M. and later stated it was between "6:00, 6:30." When questioned by the State how he knew what time it was, defendant replied "I'm assuming. I don't know for sure."

[11] During his testimony, defendant was asked whether he and Ms. Tappan were "smoking out of the same stuff?" Defendant responded, "No. **I supplied**—well, again, her addiction is different from mine. I, I—my choice of addiction of drug is, is crack; hers is meth; so, no, we did not use the same drug." (Emphasis added.)

requesting any money or anything of value from her for holding the drugs for her at his house. He testified that when Ms. Tappan returned for her drugs, they did not communicate because he was on the phone. He stated he placed the methamphetamine on the counter and pointed towards it for Ms. Tappan to retrieve. She picked up the methamphetamine and left. He testified that he is not a drug dealer, he is a "user." He stated that he did not sell methamphetamine to Ms. Tappan. Defendant testified that Ms. Tappan staged a fake distribution and that she stated she would do "anything" to avoid the narcotics charge.

Defendant acknowledged that he had methamphetamine in his house and that he knew that the methamphetamine was in his house. He also admitted that he placed the methamphetamine on the counter and gestured toward it for Ms. Tappan to retrieve.

## DISCUSSION

In his first assignment of error, defendant contends that the evidence was insufficient to support his conviction. Defendant challenges the reliability and credibility of the CI, Ms. Tappan. He argues that Ms. Tappan admitted that she was a drug addict and would do "anything" to avoid prison. He contends that she did not inform the police that she had used methamphetamine at his house hours before the scheduled, undercover drug purchase and that she left her methamphetamine at his house. He contends that he only returned the drugs she left at his residence. Defendant asserts that it is not out of character for Ms. Tappan to lie and manipulate others for her own benefit, especially in this case, where she agreed to be a CI to avoid jail time for possession of narcotics. He contends that the jury was forced to assume the State met its burden of proof, even though the video recording of the alleged drug purchase did not clearly show that a narcotics purchase had occurred.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in

the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the State proved all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Chinchilla, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, writ denied, 21-274 (La. 04/27/21), 314 So.3d 838, cert. denied, — U.S. —, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021); State v. Sosa, 05-213 (La. 01/19/06), 921 So.2d 94, 99.

Review for sufficiency of evidence requires the reviewing court to defer to the trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Clifton, 17-538 (La. App. 5 Cir. 05/23/18), 248 So.3d 691, 702. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. State v. Caffrey, 08-717 (La. App. 5 Cir. 05/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La. 02/05/10), 27 So.3d 297. Further, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the trier of fact and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Lane, 20-181 (La. App. 5 Cir. 01/27/21), 310 So.3d 794, 804. Consequently, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt beyond a reasonable doubt but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 04/15/08), 985 So.2d 234, 240.

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Bartholomew, 18-670 (La. App. 5 Cir. 10/23/19), 282 So.3d 374, 382. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness's

testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Washington, 16-732 (La. App. 5 Cir. 04/12/17), 219 So.3d 1221, 1226. It is not the function of this court to assess the witnesses' credibility or re-weigh the evidence. State v. Lane, 20-137 (La. App. 5 Cir. 12/23/20), 309 So.3d 886, 906, writ denied, 21-100 (La. 04/27/21), 314 So.3d 836.

Defendant was convicted of one count of distribution of methamphetamine weighing less than twenty-eight grams in violation of La. R.S. 40:967 A(1), which provides that it is unlawful for any person to knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II, which includes methamphetamine. La. R.S. 40:964 C(2). To establish the offense of distribution of a controlled dangerous substance, the State must prove: (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer;[12] and (3) the exact identity of the controlled dangerous substance. State v. Beason, 16-195 (La. App. 5 Cir. 12/07/16), 204 So.3d 1206, 1210. The term "distribute," means "to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to a lawful order of a practitioner." La. R.S. 40:961(15). "Delivery" has been jurisprudentially defined as transferring possession or control. Brown, 904 So.2d at 808.

Defendant challenges his conviction on the basis of Ms. Tappan's credibility. He contends that her testimony was not believable because of her CI contract, prior drug use, and prior criminal history. The jury heard testimony from the State's witnesses and from defendant as to the details of the alleged narcotics transaction between Ms. Tappan and defendant, weighed the evidence, and made a credibility

---

[12] The element of guilty knowledge is satisfied with proof of general intent. State v. Brown, 05-102 (La. App. 5 Cir. 05/31/05), 904 So.2d 805, 808, writ denied, 06-1287 (La. 01/26/07), 948 So.2d 159. General intent is present when "there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2).

determination. In returning a guilty verdict, the jury obviously believed Ms. Tappan and the detectives' version of events, over defendant's version, and found that the evidence supported a conviction for distribution of methamphetamine weighing less than twenty-eight grams.[13] See Washington, *supra*; Lane, *supra*. Viewing the evidence in the light most favorable to the prosecution under the Jackson standard, we find that a rational trier of fact could have found that the evidence was sufficient to convict defendant of distribution of methamphetamine weighing less than twenty-eight grams. This assignment is without merit.

In his second assignment of error, defendant contends that the trial court erred in allowing evidence that the CI, Ms. Tappan, purchased drugs from him on multiple prior occasions. He asserts that the State did not provide any other corroborating evidence besides Ms. Tappan's self-serving statement. He claims that Ms. Tappan had credibility issues and provided false testimony. He asserts that the admission of this other crimes evidence was highly inflammatory and it caused the jury to believe he was a bad person and a known drug dealer in the area.

On September 18, 2019, the State filed a notice of intent to introduce evidence pursuant to La. C.E. art. 404 B, seeking to introduce evidence that defendant was willing to sell methamphetamine to Kadrina Tappan in this case because they knew each other. The State contended that Ms. Tappan purchased small amounts of

---

[13] Further, considering State v. Raymo, 419 So.2d 858, 861 (La. 1982), we find the State presented sufficient evidence under the Jackson standard to establish the essential statutory elements of distribution of methamphetamine weighing less than twenty-eight grams. Ms. Tappan testified that she purchased three grams of methamphetamine from defendant for $125.00. The detectives testified that they were present when Ms. Tappan set up the controlled buy of the narcotics and negotiated a price of $125.00. They also testified they gave Ms. Tappan $125.00 to purchase the narcotics, monitored the controlled buy, and immediately received the substance from Ms. Tappan afterwards. The substance tested positive as methamphetamine weighing 3.05 grams in a field test. Defendant also testified that he had possession of the methamphetamine in his house, had knowledge that it was there, placed the methamphetamine on the counter and gestured for Ms. Tappan to retrieve the methamphetamine. He stated that she picked up the methamphetamine and left his residence. Ms. Tappan testified that she left the $125.00 on the counter when she purchased the methamphetamine from defendant. The detectives testified that immediately after the controlled buy, a search of Ms. Tappan's person and vehicle showed that she did not have any money on her and it was left with defendant. Mr. Schultz also confirmed that the substance was methamphetamine and it had a net weight of two grams.

narcotics from defendant on several occasions "between late 2017 and late 2018."[14] The State argued that evidence of the prior sales was sufficiently similar to the evidence that would be presented in this case. The State averred that this evidence indicated a pattern of intentional conduct by defendant. The State asserted that the evidence of the prior sales was relevant pursuant to the provisions of La. C.E. art. 404 B in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident."

On September 24, 2019, defendant filed an opposition and motion in *limine* seeking to prohibit the State from making any direct or indirect reference to any alleged prior narcotics sales to Ms. Tappan. Defendant asserted that the evidence should be precluded because the State failed to show that evidence of the previous alleged sales of narcotics has independent relevance. Defendant also argued that the prejudicial effect of the evidence outweighed its probative value. The trial court set defendant's motion in *limine* for hearing.

On January 14, 2020, the trial court granted the State's notice of intent, finding that the "law was designed specifically for these types of facts," noting defendant's objection.[15]

At trial, Ms. Tappan testified that she began purchasing drugs from defendant in 2017 or 2018. She stated that she initially bought crack cocaine from defendant every day. Ms. Tappan testified that after she quit using crack cocaine, she had trouble finding methamphetamine. She was told she could go to defendant if it "was something that [she] needed." Ms. Tappan testified that she bought methamphetamine from defendant "a couple of times. Not very often."

---

[14] On January 29, 2020, the State filed a second notice of intent to introduce evidence of defendant's three prior narcotic convictions pursuant to La. C.E. art. 404 B. Admission of this evidence was not appealed by defendant.

[15] The transcript and minute entry state that the trial court granted the State's notice of intent. The trial court presumably denied defendant's motion in *limine* to exclude the evidence sought to be admitted, although the trial court did not specifically rule on the motion in *limine*.

Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La. 1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Williams, 10-51 (La. App. 5 Cir. 07/27/10), 47 So.3d 467, 474, writ denied, 10-2083 (La. 02/18/11), 57 So.3d 330. Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad acts. La. C.E. art. 404 B(1); State v. Lawson, 08-123 (La. App. 5 Cir. 11/12/08), 1 So.3d 516, 525.

In order for other crimes evidence to be admitted under La. C.E. art. 404 B(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. Lawson, 1 So.3d at 525-26. Moreover, the probative value of the extraneous evidence must outweigh the prejudicial effect. La. C.E. art. 403. Even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay or waste of time. La. C.E. art. 403. As used in the balancing test, prejudice limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. State v. Ard, 20-221 (La. App. 5 Cir. 04/28/21), 347 So.3d 1046, 1057.

The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. State v. Miller, 10-718 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 187, writ denied, 12-282 (La. 05/18/12), 89 So.3d 1191,

cert. denied, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013). Clearly, evidence of other crimes or bad acts is prejudicial since all evidence that tends to make it more probable than not that an individual committed a criminal offense is necessarily prejudicial. State v. Garcie, 17-609 (La. App. 5 Cir. 04/11/18), 242 So.3d 1279, 1285; State v. Cotton, 07-782 (La. App. 5 Cir. 02/19/08), 980 So.2d 34, 42, writ denied, 08-603 (La. 10/03/08), 992 So.2d 1010. The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. Garcie, 242 So.3d at 1285; State v. Williams, 02-645 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La. 4/25/03), 842 So.2d 398. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404 B(1) will not be disturbed. Garcie, 242 So.3d at 1285; State v. Maize, 16-575 (La. App. 5 Cir. 06/15/17), 223 So.3d 633, 649, writ denied, 17-1265 (La. 04/27/18), 241 So.3d 306.

Upon review, we find that the trial court did not abuse its discretion in admitting the other crimes evidence. Ms. Tappan's testimony that she previously purchased small amounts of crack cocaine and methamphetamine from defendant was sufficiently similar to the evidence presented in the instant case. Evidence of prior sales of narcotics from defendant to Ms. Tappan indicates a pattern of intentional conduct by the defendant and shows an absence of mistake or accident. Additionally, defendant did not show that he was prejudiced by the trial court's admission of the other crimes evidence.

Nevertheless, even if the trial court erred in allowing admission of the evidence, the erroneous admission of other crimes evidence is subject to a harmless error analysis. State v. Williams, 05-318 (La. 01/17/06), 921 So.2d 1033, 1036, writ denied, 06-973 (La. 11/03/06), 940 So.2d 654. An error is harmless when the verdict is "surely unattributable to the error." State v. Massey, 11-358 (La. App. 5 Cir.

03/27/12), 97 So.3d 13, 29, writ denied, 12-993 (La. 09/21/12), 98 So.3d 332. In this case, there was ample evidence to support defendant's conviction without evidence of defendant's prior narcotics transactions with Ms. Tappan. Ms. Tappan testified that on November 6, 2018, while working as a CI, she purchased three grams of methamphetamine from defendant for $125.00. Additionally, Detective Kingsmill and Detective April testified as to the details of the controlled buy that occurred between Ms. Tappan and defendant and a video of the transaction was shown to the jury. Even if the trial court erred by admitting the evidence, any such error was harmless considering the evidence submitted established that defendant distributed methamphetamine to Ms. Tappan. We find the guilty verdict of distribution of methamphetamine was surely unattributable to the evidence of any prior drug transactions between defendant and Ms. Tappan. Accordingly, we find the trial court did not err in admitting the prior narcotics sales from defendant to Ms. Tappan. This assignment of error is without merit.

**ERRORS PATENT**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The following errors patent require corrective action.

The trial court adjudicated defendant as a fourth-felony offender and sentenced him to sixteen years imprisonment at hard labor without the benefit of probation or suspension of sentence pursuant to Dorthey, *supra*.[16] Upon review of the facts and law, we find that the mitigating factors cited by defendant and relied upon by the trial court, and the court's stated reasons, are not sufficient to warrant a

---

[16] A review of the sentencing minute entry reflects that defendant's enhanced sentence was to be served without the benefit of probation, parole, or suspension of sentence. However, the sentencing transcript reflects that the trial court ordered the enhanced sentence to be served without benefit of probation or suspension of sentence as required by La. R.S. 40:967 and La. R.S. 15:529.1 G. Because this court is vacating defendant's enhanced sentence and remanding for resentencing, this issue is moot.

deviation from the mandatory minimum sentence of twenty years imprisonment at hard labor for a fourth-felony offender. For the reasons fully discussed in the companion case <u>State v. Johnson</u>, 22-300 (La. App. 5 Cir. 08/09/23), — So.3d —, we find defendant's enhanced sentence is illegally lenient and that the trial court abused its discretion in deviating from the mandatory minimum sentence for a fourth-felony offender. Accordingly, we vacate defendant's enhanced sentence and remand for resentencing according to law.

Additionally, the Uniform Commitment Order ("UCO") shows the date of this offense as November 28, 2018. However, the record indicates that this offense was committed on November 6, 2018. Accordingly, we remand this matter to the trial court for correction of the UCO to reflect the correct date of the offense. The Clerk of Court for the 29th Judicial District Court is ordered to transmit the original of the corrected UCO to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections' legal department.

**<u>CONVICTION AFFIRMED; ENHANCED SENTENCE VACATED; REMANDED FOR RESENTENCING</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 9, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

## 22-KA-383

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
J. TAYLOR GRAY (APPELLEE)

**MAILED**
PRENTICE L. WHITE (APPELLANT)
ATTORNEY AT LAW
LOUISIANA APPELLATE PROJECT
POST OFFICE BOX 74385
BATON ROUGE, LA 70874

HONORABLE JEFFREY M. LANDRY
(APPELLEE)
ATTORNEY GENERAL
MARKO MARJANOVIC (APPELLEE)
ASSISTANT ATTORNEYS GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
POST OFFICE BOX 94005
BATON ROUGE, LA 70804

HON. HONORABLE JOEL T. CHAISSON, II
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-NINTH JUDICIAL DISTRICT
COURT
POST OFFICE BOX 680
HAHNVILLE, LA 70057